HATCHETT, Circuit Judge:
 

 In this bankruptcy action, a bank asserted that it held a security interest in certain claims arising from a security agreement between the bank and a debtor. The district court classified the claims under the Alabama Uniform Commercial Code. In reviewing these classifications, we affirm in part, reverse in part, and remand.
 

 I. BACKGROUND
 

 A.
 
 Facts and Proceedings Below
 

 Maritime Coatings, Inc. (Maritime), performed specialized sandblasting and coating work on liquid natural gas carriers for various shipyards including Newport News. Since its inception in 1974, Maritime and Merchants National Bank of Mobile (Bank) maintained a debtor/creditor relationship. In return for the Bank’s financing of Maritime’s operations, Maritime would execute notes, security agreements, and financing statements in favor of the Bank. Outstanding at bankruptcy were four promissory notes representing the debts then owed by Maritime to the Bank.
 

 Merchants National’s claim of secured party status is based on a security agreement executed by Maritime Coatings in February, 1979, on the Bank’s form entitled “Security Agreement (Accounts Receivable)” and containing, among other things, the following provisions:
 

 “Account” means a right to payment for goods sold or leased or for services rendered, and includes a right to payment which has been earned under a contract right.
 

 “Contract right” means a right to payment under a contract not yet earned by performance.
 

 Borrower hereby grants to Bank to secure all Borrower’s liabilities, a security interest under the Uniform Commercial Code in: (a) all accounts now owned and hereafter acquired whether or not specifically assigned by Borrower; (b) such contract rights as Borrower may from time to time specifically assign to Bank; and (c) all proceeds of such accounts and contract rights.
 

 In the Office of the Secretary of State of the State of Alabama, Merchants National Bank duly recorded financing and continuation statements executed by the parties, wherein Maritime Coatings was designated as the debtor, the Bank was designated as the secured party, and the collateral was described as “all accounts and contract [sic] of Debtor, whether now or hereafter existing or acquired.”
 

 The claims pertaining to this litigation arose out of contractual relations between Maritime Coatings and Newport News. Operating under two separate contracts with modifications, Maritime performed sandblasting and coating work on three ships located in Newport News’s shipyard over a two and one-half year period from December, 1976, through June, 1979. The first contract covered sandblasting and coating on hulls 609 and 610. Maritime completed this work in June, 1979, and invoiced Newport News for the balance including retainages due under the contract.
 
 [1]
 
 In addition, various invoices claiming amounts due for rework on hull 609, the
 
 *1385
 
 cost of renting, maintaining and operating a forklift, and extended job costs caused by delays were prepared in connection with this contract and are referred to as Maritime’s claims 2, 3, and 4 against Newport News. The second contract called for Maritime to sandblast and coat seventeen tank tops on hull 613. Maritime performed the work on three of the tank tops and was paid. Newport News, however, performed the work on the remaining fourteen tank top units and prevented Maritime from completing the contract. This act of prevention gives rise to Maritime’s claim for profits anticipated by Maritime had it completed the work and constitutes claim 5.
 

 In September, 1979, Merchants National Bank, as “secured creditor of Maritime Coatings, Inc.,” filed suit against Newport News in the United States District Court for the Eastern District of Virginia. The Bank alleged that it was a perfected secured creditor of Maritime on all receivables, choses in action, and causes of action owned by Maritime against Newport News and therefore was empowered to enforce and prosecute all of Maritime’s claims against Newport News. While that lawsuit was pending, Maritime filed its involuntary bankruptcy petition in March, 1980, and the United States Bankruptcy Court for the Southern District of Alabama adjudicated it bankrupt. Thereafter, Merchants National Bank filed an adversary complaint seeking relief from the automatic stay imposed by section 362(a) of the Bankruptcy Code, 11 U.S.C.A. § 362(a) (1979). The Bank sought relief in order to continue the pending litigation against Newport News. In its amended complaint, Merchants National requested the bankruptcy court to determine lien priority, and sanction a proposed settlement with Newport News regarding the accounts receivable the Bank was attempting to collect. During the course of the hearing on the adversary complaint, a stipulation was entered into between Newport News, Merchants National Bank, and the trustee of the estate of Maritime Coatings. The partiés agreed that the value of all claims against Newport News in which the Bank claimed a security interest did not exceed the amount of legitimate debt owed to the Bank by Maritime. Thus, the question of whether equity for the estate was present in the accounts receivable due and owing Maritime from Newport News was removed from the bankruptcy court’s consideration, and the sole question then became the lien priority and ownership of the potential claims. The bankruptcy court ruled that Merchants National Bank did not hold a security interest in any of the claims and entered judgment for the trustee. The bankruptcy court characterized the claim for rework as an equitable right to payment for work performed over and above the contract price. This claim, according to the bankruptcy court, was neither a contract right nor an account, but a general intangible under the UCC. The claims for extended job costs caused by delays and lost profits resulting from Newport News’s prevention of Maritime’s performance of the contract were held to be tort claims for wrongful interference of contract. As such, these claims were not within the provisions relating to secured transactions under the UCC. The bankruptcy court further held the claim for expenses incurred in renting and operating a forklift to be a chose in action which, under the UCC, is classified as a general intangible. From the district court’s order upholding the bankruptcy court’s determination of the legal significance of these claims, Merchants National Bank appeals.
 

 B.
 
 Pertinent Statute
 

 The terms involved are defined in Ala. Code § 7-9-106 (1975) as follows:
 

 “Account” means any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper. “Contract right” means any right to payment under a contract not yet earned by performance and not evidenced by an instrument or chattel paper. “General intangibles” means any personal property (including things in action) other than goods, accounts, contract rights, chattel paper, documents and instruments.
 

 
 *1386
 
 The Official Comment under section 7-9-106 offers the following explanation as to these terms:
 

 “Account” as defined is a right to payment for goods sold or leased or services rendered: that is to say, a right earned by performance, whether or not due and payable, the ordinary commercial account receivable. “Contract right” is a right to be earned by future performance under an existing contract: for example, rights to arise when deliveries are made under an installment contract or as work is completed under a building contract. Contract rights may be regarded as potential accounts: they become accounts as performance is made under the contract.
 

 C.
 
 Issues on Appeal
 

 We must decide the correctness of the legal classification given to these particular claims. Merchants National Bank contends that the claims for rework, forklift rental expenses, and extended job costs constitute accounts because they represent rights to payment for goods sold or leased or for services rendered and, thus, were improperly classified as general intangibles. As for the lost profits claim, Merchants National Bank maintains that where one party prevents another party from completing a duty owed under a contract, the right to payment not yet earned under the contract remains a contract right under the UCC as between the debtor and the secured party. The trustee, on the other hand, argues that the bankruptcy court’s classifications were correct. Both the Bank and the trustee agree that the debts due Maritime by Newport News for work performed under the terms of the original contracts, but withheld by way of retainage or otherwise, were accounts and the Bank’s claim to these accounts is superior to the rights of the trustee. Therefore, at issue are claims 2 through 5, the nature of these claims under the UCC and whether Merchants National Bank holds a perfected security interest in these claims under its security agreement.
 

 II. CLAIM FOR REWORK (CLAIM 2)
 

 Through negotiations beginning in late 1977, Maritime Coatings and Newport News reached an agreement concerning adjustments in the contract price for the work on hulls 609 and 610. In connection with this agreement, which is evidenced by modification 5 to the contract, Maritime Coatings executed a release dated March 20, 1978, discharging Newport News from any and all claims resulting from events, actions, or omissions arising out of, under or in any manner connected with the contract, whether known or unknown to either or both of the parties as of the date of the release. Three exceptions were listed in the release, the most pertinent of which is the following: “[Maritime Coatings] shall be entitled to an equitable adjustment in the event that rework is caused by the actions of others as defined in [Maritime Coatings’s] letter of March 6,1978.” The letter referred to defines rework as additional work required “by inadvertent actions of others in which Maritime Coatings had no control,” and cites as an example “the Yard putting water into an area that was being blasted, thereby causing additional man-hours to prepare surface according to recommended specifications.” Modification 5 to the contract specifically incorporates Maritime’s release and states that it “accompanies and forms part of this modification.”
 

 Maritime Coatings’s claim for rework on hull 609 arose out of the following circumstances. While in the process of blasting and coating hull 609 in August, 1978, and through no fault of Maritime Coatings, water from Newport News’s pipelines was allowed to enter the tanks on which Maritime was working. The water caused damage to the work already performed and necessitated recleaning the tanks. Additional work had to be undertaken and the work already performed had to be “reworked.” Maritime Coatings’s claim of $40,000 for the rework was expressed in invoice 920 and the details of the additional work performed were outlined in a letter from Maritime to Newport News dated October 2, 1979, and attached to the invoice.
 

 
 *1387
 
 The bankruptcy court held the claim for rework to be an equitable right to payment for work over and above the contract price, and was properly classified as a general intangible under Ala.Code § 7-9-106. Merchants National Bank argues that this is a misapplication of law. According to the Bank, rework is generally in the nature of quantum meruit, that is, liability the extent of which is based on a contract implied in law. In this case, however, by authority of the release between Maritime and Newport News and modification 5 to the contract, the claim for rework was specifically covered and incorporated into the terms of the contract. Thus, the claim represents an account because of the contractually authorized right to payment for services rendered. The trustee argues that Newport News’s admission of allowing water to enter the tanks on hull 609 signifies a negligent act damaging Maritime’s work in progress. The proximate result of this negligence caused Maritime to suffer the costs and expenses of performing rework to the work already performed. If not a tort claim, the trustee contends, the claim is one for damages for breach of contract by Newport News’s failure to insure that the tanks were dry.
 

 We disagree with the trustee’s assertion that the invoice for rework represents a claim for damages based on the negligence of Newport News. The reason for the rework is not the issue; rather, the contractual agreement authorizing its performance is the key. Modification 5 and the release, both of which form part of the original contract, clearly indicate that Maritime was entitled to assert the claim for rework as it represents a right to payment for services rendered. An account, therefore, exists. We are further unpersuaded by the trustee’s contention that to come within the UCC’s definition of an account, the amount claimed must be a liquidated sum. We find nothing in the wording of Ala.Code § 7-9-106 or the comments thereto that require the right to payment for services rendered to be a prearranged fixed price in order for an account to arise. It is performance rather than calculations of an exact sum which is the key factor in determining when an account comes into legal existence.
 
 Utica National Bank and Trust Co. v. Associated Producer's Co.,
 
 622 P.2d 1061 (Okl.1981). That Maritime and Newport News may negotiate for the payment due does not prevent an account from coming into existence upon Maritime’s performance. We are unconcerned that set-offs or the intervention of bankruptcy may have rendered valueless the amounts claimed as rework. We hold only that under the facts of this case, the rework was performed under the terms of the contract and by definition, comprises an account under section 7-9-106. The bankruptcy court’s holding to the contrary is reversed.
 

 III. CLAIM FOR EXPENSES INCURRED IN RENTING, MAINTAINING, AND OPERATING A FORKLIFT (CLAIM 3)
 

 This category represents a claim against Newport News for costs incurred in the leasing of a forklift used by Maritime Coatings for the purpose of transporting blasting grit. Under the terms of the contract pertaining to hulls 609 and 610, Newport News expressly agreed to furnish crane service and necessary on-site storage space for Maritime’s material and equipment. In the course of performing the contract, Maritime experienced considerable difficulty in securing crane service when needed to unload grit from the supplier’s trucks and transfer it to the areas where the hulls were being blasted. Maritime’s supplier became increasingly disturbed over the delays encountered in unloading and threatened to stop shipments. In order to pacify the supplier, secure the grit needed for its operations, and fulfill the contract, Maritime leased a forklift to handle the blasting grit. This claim covers rental, maintenance, and labor expenses for the operation of the forklift and was expressed in invoices 953 and 978. Maritime Coatings prepared invoice 953 indicating a $15,839.79 claim for the forklift rental and maintenance expenses. Invoice 978 was prepared by a consultant hired by the Bank and
 
 *1388
 
 claimed an additional $54,400 expense for the labor cost of operating the forklift.
 

 The bankruptcy court held this claim to be neither an account nor a contract right. Rather, the court viewed the claim as one for breach of contract by Newport News in failing to provide the crane service as specified. Accordingly, the claim was held to be a chose in action which, under the UCC is classified as a general intangible.
 

 Contending that this ruling was erroneous, Merchants National Bank relies on the contract provision requiring Newport News to supply crane service. The failure to do so, the Bank reasons, forced Maritime Coatings to lease a forklift in order to perform the contract. The Bank further rationalizes that Maritime Coatings leased the forklift from the forklift lessor and, in effect, became a lessor of the forklift to Newport News. Thus, the cost of renting the forklift constituted a right to payment for goods sold or leased. We disagree. The claim is based upon Newport News’s failure to carry out the contract as promised. Despite this breach, Newport News never agreed to become a sub-lessee of the forklift for the benefit of Maritime Coatings. While we acknowledge Maritime’s need for the forklift to continue the job, the resultant expenses nevertheless constitute damages for the breach. An account does not include liability for unliquidated damages resulting from a breach of contract.
 
 Harnischfeger Sales Corp. v. Pickering Lumber Co.,
 
 97 F.2d 692 (8th Cir. 1938).
 
 See also, Williamston Pants Co. v. Bankers Trust Co.,
 
 68 A.D.2d 811, 413 N.Y.S.2d 936 (App.Div.1979) (breach of contract claim does not partake of the requisite nature of collateral to which a security interest may adhere). The bankruptcy court’s characterization of this claim was correct.
 

 IV. CLAIM FOR EXTENDED JOB COSTS INCURRED BY MARITIME COATINGS IN WORK DELAYS CAUSED BY NEWPORT NEWS (CLAIM 4)
 

 The claims represented by invoice 979 are the result of extended job costs caused by repeated delays on the part of Newport News and its failure to provide adequate and timely yard services as agreed upon. The bankruptcy court held the extended job costs to be tort claims and ruled for the trustee. We find no error in this ruling. In the release executed in connection with the modifications to the contract, Maritime Coatings released Newport News “from any and all claims resulting from events, actions, or omissions arising out of, under or in any manner connected with [the] contract, whether known or unknown to either or both of the parties as of the date of this release.” Under the terms of the release, Maritime, and thus, Merchants National Bank, is precluded from asserting or pursuing any claims against Newport News for extended job costs resulting from delays caused by Newport News.
 

 V. LOST PROFITS CLAIM (CLAIM 5)
 

 In June, 1978, Newport News and Maritime entered into a contract providing for surface preparation and painting of seventeen tank top units on hull 613. Maritime completed the work on three of the units and received payment therefor. Newport News, however, performed the work on the remaining fourteen units thereby preventing Maritime from completing the contract. The claim expressed in invoice 977 for $212,912 represents the amount of profit Maritime would have received had it been allowed to complete the remaining fourteen units. Again, the bankruptcy court held this claim to be one for wrongful interference with the performance of the contract sounding in tort and not encompassed within the provisions relating to secured transactions under the UCC. Merchants National raises the argument that where one party prevents another from completing a duty owed under a contract, the right to payment not yet earned under the contract remains a contract right. The Bank further claims this contract right has been specifically assigned to it by a letter addressed to Newport News and signed by a Bank vice-president and the president of Maritime Coatings requesting Newport
 
 *1389
 
 News to make payments on accounts due jointly to Maritime and the Bank, as the holder of a security interest in Maritime’s accounts receivable and contract rights. As found by the bankruptcy court, this letter is not in and of itself an assignment of anything. It is nothing more than a request to make joint payment.
 

 The claim for lost profits cannot find its basis in the contract. When Newport News prevented Maritime from completing the job, no right to payment for future performance existed because the work was completed. The claim, therefore, is one for damages arising out of a breach of contract. Correctly categorized, it represents a chose in action belonging to Maritime Coatings in which the Bank did not hold a security interest.
 
 [2]
 

 CONCLUSION
 

 We affirm those portions of the bankruptcy court’s decision rejecting as accounts the claims based on expenses incurred in the leasing of the forklift, extended job costs caused by delays, and lost profits resulting from the prevention of the contract’s performance. We reverse that part of the decision interpreting rework as a general intangible, and hold that claim to come within the definition of an account under Ala.Code § 7-9-106 (1975). Accordingly, we remand to the district court with instructions to enter judgment for Merchants National Bank on the rework claim.
 

 AFFIRMED IN PART; REVERSED IN PART and REMANDED.
 

 [1]
 

 . Both the trustee and the Bank agree that the balance due under the contract between Maritime Coatings and Newport News for goods sold and services rendered, either due or withheld by way of retainage, represents an account in which the Bank holds first lien priority status. This security interest was perfected as against the trustee by the recorded financing and continuation statements. Thus, the Bank’s security interest on this account is superior to the rights of the trustee and the claim for this balance is not in issue.
 

 [2]
 

 . Even if Merchants National were to prevail on its argument that the claim is based on a contract right, the record includes no document executed by a representative of Maritime Coatings specifically assigning contract rights to Merchants National. R. W. Trum, President of Maritime Coatings, testified that Maritime never gave the Bank any specific assignment of contract rights. In an attempt to prove assignment by another method, Bank representatives typed on the bottom of the Bank’s copy of invoice 977, the invoice representing the lost profits claim, the following notation:
 

 “This invoice is assigned to:
 

 The Merchants National Bank of Mobile
 

 Mobile, Alabama 36622.
 

 THE MERCHANTS NATIONAL BANK OF MOBILE
 

 By /s/ James S. Dowdell
 

 Vice President”
 

 This notation does not appear on the original invoice submitted to Newport News by Maritime Coatings nor on Maritime’s copy. It was placed on the Bank’s invoice copy without the authority or knowledge of Maritime’s executives.