**In re Thomas H. WILSON, Debtor.**

**Bankruptcy No. 85–01611.**

United States Bankruptcy Court,
M.D. Alabama, E.D.

Jan. 16, 1986.

Sam E. Loftin, Phenix City, Ala., for movant.

V. Cecil Curtis, Phenix City, Ala., for contestant.

## MEMORANDUM OPINION ON OBJECTION TO CONFIRMATION OF PLAN

A. POPE GORDON, Bankruptcy Judge.

The objection of Larry Dixon to the confirmation of the Chapter 13 plan of the debtor, Thomas Wilson, was heard November 13, 1985. At that time, the parties were given until December 18, 1985, to file briefs. Briefs have been filed and the case is taken as submitted on the brief, the court files, and oral arguments of counsel.

### Findings of Fact

On June 19, 1982, the debtor, Thomas Wilson, shot Larry Dixon in the groin with a shotgun. Dixon sued Wilson and recovered judgment on January 15, 1985, in the sum of $100,000.

On February 7, 1985, Wilson filed a petition with this court under 11 U.S.C. Chapter 7. Dixon filed a complaint in the Chapter 7 case under 11 U.S.C. § 523(a)(6) alleging that the $100,000 judgment was a nondischargeable debt. After a hearing on the complaint, this court in an opinion authored by Chief Bankruptcy Judge Rodney R. Steele, held that the debt was not dischargeable.

On March 11, 1985, after Wilson's bankruptcy, Dixon recorded a certificate of the $100,000 judgment against Wilson in the Probate Office of Russell County, Alabama. Thereafter, on June 28, 1985, Wilson received a discharge in the Chapter 7 case.

Then, on September 24, 1985, Wilson filed a petition for relief under 11 U.S.C. Chapter 13 commencing the case now before the court. The only debt listed in the petition is the $100,000 judgment debt. The plan as proposed seeks a composition of the debt. Wilson would pay ten percent of the amount of the judgment ($10,000) to Dixon over a period of five years. Personal property in the amount of $900 was claimed as exempt in the petition. On December 11, 1985, Wilson filed a motion seeking, among other things, to amend the petition to relinquish the exemption claimed. Also by amendment, the debtor added to the schedule of property a pension and profit sharing plan at Uniroyal, Inc., Opelika, Alabama, his employer of 14 years, having a value of about $5,000.

Sometime after the Chapter 7 case and before the Chapter 13 case, Dixon obtained a garnishment in state court against Wilson's wages. The amount of $604.35 is presently being held under the garnishment. The withheld wages have not been condemned as provided by *Code of Alabama,* 1975, § 6–10–37, to perfect the lien of the garnishment and defeat a claim of exemption.

Prior to the confirmation hearing, Dixon filed an objection to confirmation of the plan alleging that unsecured debts exceed $100,000, thus making Wilson ineligible to be a debtor under Chapter 13. He also alleged that the plan was not filed in good faith in violation of 11 U.S.C. § 1325(a)(3) in that the plan was filed for the sole purpose of discharging an otherwise nondischargeable debt.

### Conclusions of Law

#### Issues

There are three issues raised in the objection and the briefs. First, there is a dispute as to the amount of the debt and whether it is less than the limit of $100,000 for unsecured debt set by 11 U.S.C. § 109(e). Second, the amount of secured versus unsecured debt is in dispute and must be determined as provided in 11 U.S.C. § 506(a). Third, the question of whether the plan was filed in good faith is raised.

#### Amount of Total Debt

The provisions of 11 U.S.C. § 109(e) establish the standards which must be met for an individual with regular income to be eligible to be a debtor under Chapter 13. The provisions are restrictive and specific. Specific monetary amounts are established. The pertinent part of the subsection reads:

"(e) *Only* an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated,

unsecured debts of *less than $100,000,* and noncontingent, liquidated, secured debts of less than $350,000 ... may be a debtor under Chapter 13 of this title." (Emphasis added.)

The creditor Dixon argues that his claim totals approximately $108,000. The judgment of $100,000 was entered on January 15, 1985. Judgments in Alabama earn interest at the rate of 12% per annum. *Code of Alabama,* 1975, § 8–8–10. The Chapter 13 petition was filed approximately eight months after the judgment. At the time of filing, approximately $8,000 in interest had accrued.

In response, the debtor Wilson argues that no interest accrued while the Chapter 7 case was pending from February 7, 1985, to June 28, 1985. Central to the debtor's argument is the issue of accrual of interest after the Chapter 7 case was filed. If interest did·not accrue after that and certain portions of the debt are secured by the judgment lien, as the debtor contends, reduction of the indebtedness without interest by the amount of secured debt would be sufficient to bring the unsecured debt below $100,000.

■ The court concludes, however, that interest did accrue while the debtor's Chapter 7 case was pending. Disallowance of claims for postpetition interest is a rule of policy and convenience and not a statement of substantive law. The purpose of such disallowance is to cope in the most convenient, economical and equitable way with the debtor's insolvency by allowing the value of claims to be quickly ascertained so that liquidation may follow swiftly. 3 *Collier on Bankruptcy,* ¶ 502.02[2] at 502–33 (15th ed. 1985). As a matter of substantive law, if the debtor's assets are sufficient to pay all indebtedness, 11 U.S.C. § 726(a)(5) requires interest earned since the date of filing to be paid before any surplus is returned to the debtor. In the debtor's Chapter 7 case, the debt to Dixon was determined to be nondischargeable. Therefore, the debt, including accrued interest, passed unimpaired through the administration of the Chapter 7 estate. The court can find no justification for disregarding interest on a nondischargeable debt. Accrued interest was part of the debt owed to this creditor on September 24, 1985, the date of filing the Chapter 13 petition. It follows that the total debt with interest on that date was $108,000.

### *Amount of Unsecured Debt*

The debtor says in effect that the debt is partially secured by the lien created by Alabama law when the certificate of judgment was filed of record, citing *Code of Alabama,* 1975, § 6–9–211, leaving unsecured debt of less than $100,000 when the secured portion is deducted. The argument is that the Chapter 13 schedules list property valued by the debtor at $900 to which the debtor says the judgment lien has attached making the debt secured in that amount. Also, the pension and profit sharing plan at Uniroyal, Inc., Opelika, Alabama, with a market value estimated to be about $5,000,[1] reduces the unsecured debt by the value of that asset because the asset is security under the judgment lien. Further, the unsecured debt should also be reduced by $604.35, the amount of withheld wages which are security under the lien of the garnishment and the judgment lien.

The argument is creative and skillfully advanced but not persuasive under the facts of this case when the scope of the judgment lien is analyzed.

The state law which provides for judicial liens is *Code of Alabama,* 1975, § 6–9–211 and § 6–9–40(2). Section 6–9–211 in pertinent part reads:

"Every judgment, a certificate of which has been filed as provided in section 6–9–

---

1. Because the debtor has not yet ascertained the exact amount of his interest in the pension plan fund, his motion amending the schedules also requests a valuation of that interest in a further proceeding. If the actual value is greater than $5,000 and secured, it could conceivably exceed the amount of accrued interest of $8,000 and thereby reduce the unsecured debt to less than $100,000. In view of the holding herein, however, it will not be necessary to determine the exact amount of the debtor's interest in the fund.

210, shall be a lien in the county where filed on all property of the defendant *which is subject to levy and sale under execution* ..." (Emphasis added.) [2]

Section 6–9–40(2) identifies that personal property which is subject to levy and sale under execution:

"Executions may be levied ... (2) on personal property of the defendant, *except things in action* ..." (Emphasis added.)

The term "thing in action" applicable to § 6–9–40(2) was construed by the Supreme Court of Alabama in *Peavy Lumber Company v. O.E. Murchison*, 272 Ala. 251 at 253, 130 So.2d 338 (1961):

"In common parlance of the law, a thing in action is designated a chose in action and means literally a thing in action. A thing in action is properly distinguished from a thing of which the owner has the actual or constructive possession ... It is commonly termed a chose in action, and is a personal right to demand money or property by an action.

"In 42 Am.Jur., *Property*, § 26, the following is stated:

'A chose in action has been defined also as a thing of which one has not the possession or actual enjoyment, but only a right to or a right to demand by an action at law. It has been said that a chose in action more properly includes the idea both of the thing itself and of the right of action annexed to it. There can in the nature of things be no present possession of a thing which lies merely in action.'"

■ Considering first the pension and profit sharing plan at Uniroyal, Inc., where the debtor is employed, the debtor says he has an interest in the pension plan through his employer with whom he has 14 years of service. Absent other facts about the nature of this asset, we conclude that it is the usual ERISA-type pension plan containing nonassignability and nonleviability provisions. The debtor has an interest in a trust fund under the plan held by the company for the benefit of all employees. The debtor's interest will be payable to him when he retires or leaves employment with the company. He does not have possession or actual enjoyment of this interest, but only contingent rights to enjoy it in the future. In fact, his interest will become due to him from the company the same as any other debt becomes due. The interest is a chose in action. Execution may not levy on this interest under § 6–9–40(2). Property not subject to levy and sale under execution does not secure a judgment under § 6–9–211.

While under certain circumstances the fund may be reached by a garnishment (see *St. Paul Fire and Marine Insurance Co. v. Cox*, 752 F.2d 550 (11th Cir.1985)), the fund cannot be reached by Dixon's judgment lien. Dixon does not have a secured claim as a creditor in the amount of the debtor's interest in the pension plan by virtue of his judgment lien.

It is not necessary to consider the impact of the judgment lien on the other personal property of the debtor valued at $900 and initially exempted, or on wages withheld under the garnishment lien in the amount of $604.35. The total value of that personal property and the wages withheld—even if the debt of $108,000 is secured to that extent—would not be enough to reduce the unsecured portion of this creditor's claim to less than $100,000.

The creditor's unsecured claim amounts to over $100,000 and exceeds the amount specified in 11 U.S.C. § 109(e). The requirement that the unsecured debt not exceed $100,000 is jurisdictional and cannot be waived. The Chapter 13 plan cannot be confirmed. The petition is due to be dismissed.

**2.** By definition the judgment is a lien in the county where the certificate of judgment is recorded. It is questionable whether the lien of the judgment, the certificate of which was filed in Russell County, Alabama, reaches the pension fund at Uniroyal, Inc., located in Opelika, Alabama, which is in another county. However, it is not necessary for determination of this matter to decide the question since the debtor fails to prevail on other grounds.

## Good Faith

Because the case has been decided against the debtor on a jurisdictional issue, the question of good faith is not reached.

An order consistent with this memorandum will issue.