**In the Matter of Beverly P. HEAD, Jr., Debtor.**

**Bankruptcy No. 91–03209–TBB–7.**

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

Feb. 6, 1997.

## MEMORANDUM OPINION

THOMAS B. BENNETT, Bankruptcy Judge.

### I. Background

Based on the same reason, the trustee of the chapter seven bankruptcy estate of Beverly P. Head, Jr., André M. Toffel (Toffel), has objected to virtually all claims filed by creditors of Mr. Head. One such claim objected to is that of Henry Tyler Construction Company, Inc. (Henry Tyler). The salient exception to Toffel's blanket objection is the claim filed by Thomas E. Reynolds, in his capacity as trustee for the bankruptcy estate of Costa and Head Land Company (Costa & Head), a partnership. The majority of creditors who/which have filed claims in Mr. Head's case assert their claim(s) based on monies owed to each by Costa & Head and

for which Beverly P. Head, Jr. is liable as a general partner of Costa & Head.

Relying on Mr. Head's general partner status, Toffel contends that every claim filed against and for which both the bankruptcy estates of Beverly P. Head, Jr. and Costa & Head are liable should be disallowed. Toffel's objection is premised on § 723(c) of the Bankruptcy Code which provides that

Notwithstanding section 728(c) of this title, the trustee has a claim against the estate of each general partner in such partnership that is a debtor in a case under this title for the full amount of all claims of creditors allowed in the case concerning such partnership. *Notwithstanding section 502 of this title, there shall not be allowed in such partner's case a claim against such partner on which both such partner and such partnership are liable, except to any extent that such claim is secured only by property of such partner and not by property of such partnership.* The claim of the trustee under this subsection is entitled to distribution in such partner's case under section 726(a) of this title the same as any other claim of a kind specified in such section.

11 U.S.C. § 723(c) (emphasis added).

To avoid disallowance of its claim for work performed for and/or services provided to Costa & Head, Henry Tyler asserts that it falls, at least in part, within 11 U.S.C. § 723(c)'s protective shield from disallowance by its "except to any extent that such claim is secured only by property of such partner and not by property of such partnership." Whether Henry Tyler's claim is allowable in this case depends on its assertion that the claim is secured by a United States treasury note (hereinafter treasury note) registered on September 7, 1982, in the name of Beverly P. Head, Jr. The treasury note had a face value of twenty-five thousand dollars ($25,-000), an initial maturity date of November 11, 1987, and was renewable every two years from on and after the initial maturity date. The secured status of Henry Tyler's claim is premised on the recordation of a certificate of judgment on March 2, 1988, with the office of the Judge of Probate of Jefferson County, Alabama. The certificate of judgment was

issued following Henry Tyler's receipt of a judgment from the 10th Judicial Circuit Court of Jefferson County, Alabama, against Beverly P. Head, Jr.[1] and James R. Forman.[2] Since Henry Tyler asserts a lien on only Mr. Head's property—the treasury note including accrued interest—it is argued that its claim is not subject to disallowance under 11 U.S.C. § 723(c). This avoidance of disallowance rests on the legal foundation of perfection of Henry Tyler's judgment under the laws of the state of Alabama and on just what is a thing or chose in action.

Prior to the recording of Henry Tyler's certificate of judgment, AmSouth Bank had possession of the treasury note. Along with other collateral, it had been pledged to secure payment of various letters of credit issued by AmSouth Bank in favor of Lloyds of London.

As a result of other litigation before this Court, the December 31, 1985, assignment of Mr. Head's interest in the treasury note to Mrs. Head was set aside as a fraudulent transfer. Subsequently, AmSouth Bank released its lien against the treasury note. By order of this Court, the treasury note was liquidated and the proceeds were paid to Toffel with liens, if any, attaching to the proceeds.

## II. Levy and Sale Under Execution— A Chose or Not

### (a) The Parties' Assertions

Henry Tyler contends that the recording of its certificate of judgment in the manner required under Ala.Code § 6–9–210[3] (1993) resulted in the attachment of a judgment lien to all real and personal property of Beverly P. Head, Jr. located in Jefferson County, Alabama which was subject to levy and sale under execution. The authority relied on for this argument is Ala.Code §§ 6–9–210, 6–9–211 (1993) along with an 1847 Supreme Court of Arkansas opinion.

Toffel asserts that a judgment lien perfected by the recording of a certificate of judgment in the manner prescribed by Ala.Code § 6–9–210 (1993) does not attach to a treasury note. His rationale is simple: it is not subject to levy and execution. The reason why is in the details of the linguistic stock of yet another Alabama statute. Toffel also argues that perfection of a lien against personal property of Mr. Head in the possession of a third party required a judgment creditor to utilize a garnishment action provided for under Ala.Code § 6–6–370 (1993).

### (b) The Path To Perfection

Although Ala.Code § 6–9–211 (1993) provides that

> Every judgment, a certificate of which has been filed as provided in Section 6–9–210, shall be a lien in the county where filed on all property of the defendant which is subject to levy and sale under execution, and such lien shall continue for 10 years after the date of such judgment ...,

this is not the end of the analysis required. Determination of whether a treasury note is subject to levy and execution necessitates examination of Ala.Code § 6–9–40(2). Ala. Code § 6–9–40(2) (1993). It provides that

[e]xecutions may be levied:

\*     \*     \*     \*     \*     \*

(2) On personal property of the defendant, *except things in action*, whether he has the absolute title thereto or the right only to the possession thereof for his own life, the life of another or any shorter period, but this does not apply to a possession acquired by a bona fide hiring of chattels.

---

1. The claim amount, $60,703.18, represents the judgment amount of $44,396.78 plus twelve percent (12%) interest accrued from the date of judgment, February 10, 1988, to the filing of the involuntary petition, April 26, 1991.

2. Henry Tyler has not recovered any monies from James R. Forman on the judgment.

3. The owner of any judgment entered in any court of this state or of the United States held in this state may file in the office of the judge of probate of any county of this state a certificate of the clerk or register of the court by which the judgment was entered, which certificate shall show the style of the court which entered the judgment, the amount and date thereof, the amount of costs, the names of all parties thereto and the name of the plaintiff's attorney and shall be registered by the judge of probate in a book to be kept by him for that purpose, which said register shall also show the date of the filing of the judgment....

Ala.Code § 6–9–210 (1993).

Ala.Code § 6–9–40(2) (1993) (emphasis added).

*State v. Lawson,* 7 Ark. 391 (1847) is the only reported court decision supplied by the parties addressing whether a treasury note is subject to levy and execution. It is conceded that this case is one based on the laws of another state. In 1847, the judgment debtor in *Lawson* was arrested with several United States treasury notes in his possession. The Arkansas court found that treasury notes in the possession of the judgment debtor at the time he was arrested by the sheriff were subject to levy and execution. *Id.* However, this case is distinguishable because, among other things, (i) it was decided during a time in American history when treasury notes were used as money or currency which is not the case here, and (ii) the sheriff took possession of the treasury notes in *Lawson* when the judgment debtor was arrested. The critical distinction is this: taking possession of the treasury notes in *Lawson* perfected the lien of the judgment creditor. Henry Tyler did not perfect its lien by obtaining possession.

■ Henry Tyler's lien perfection occurred under Ala.Code § 6–9–40(2) (1993) only if the treasury note is not a thing in action. If the treasury note is a thing in action, the recording of the certificate of judgment did not cause a lien to attach because it is not subject to levy and sale under execution. Just what a "thing in action" is one of the common law concepts usually no longer taught in law school and rarely understood by attorneys. It describes the type of right to personal property for which an owner does not have actual or constructive possession such as a promise by one party to pay monies owed to another. For the owner to obtain possession, a lawsuit must be brought. *Peavy Lumber Co. v. O.E. Murchison,* 272 Ala. 251, 130 So.2d 338, 340 (1961).

■ Another name used for a thing in action is chose in action. *Peavy Lumber Co.,* 272 Ala. 251, 130 So.2d at 340. These terms are used interchangeably. As the Alabama Supreme Court noted, "[a] thing in action is designated a chose in action and means literally a thing in action." *Peavy Lumber Co.,* 130 So.2d at 340. The term chose in action is utilized throughout the remainder of this opinion.

■ A chose in action is "a personal right to demand money or property by an action." *Peavy Lumber Co.,* 130 So.2d at 340. The term includes an infinite variety of contracts, covenants, and promises which confer on one party a right to recover a personal chattel or a sum of money from another by action. *Sheldon v. Sill,* 49 U.S. (8 How.) 441, 12 L.Ed. 1147 (1850). For example, a chose in action includes (i) money due under a contract, *Peavy Lumber Co.,* 130 So.2d at 341, (ii) damages arising from a breach of a contract, *Merchants Nat'l Bank of Mobile v. Ching,* 681 F.2d 1383, 1389 (11th Cir.1982), (iii) a check, *Tillery v. State,* 44 Ala.App. 369, 209 So.2d 432, 435 (1968), (iv) an interest in a pension and profit-sharing plan, *In re Wilson,* 56 B.R. 693, 696 (Bankr. M.D.Ala.1986), and (v) the right to receive payment under an insurance contract and the proceeds from such policy, *see Robinson v. Eppes,* 252 Ala. 242, 40 So.2d 326, 327 (1949). Additionally, intangible personal property like instruments and securities for the payment of money such as bonds and promissory notes, book entry accounts, an interest in an insurance policy, judgments, and shares of stock are within the perimeters of what is a chose in action. *Maricopa County v. Trustees of Arizona Lodge No. 2.,* 52 Ariz. 329, 80 P.2d 955 (1938).

■ Consideration of what is and is not a chose in action reveals that a treasury note is one of the set of rights to payment of monies within the demarcation of what is a chose in action. The owner of a treasury note does not have possession or actual enjoyment of the monies owed under the terms of the treasury note. He/she only has a right to payment. *See, Pan American Production Co. v. United Lands Co., Inc.,* 96 F.2d 26, 27 (5th Cir.1938); *In re Wilson,* 56 B.R. at 696; *Peavy Lumber Co.,* 130 So.2d at 341. The treasury note at issue was a contractual agreement entered between the United States and Beverly P. Head, Jr. The United States agreed to pay twenty-five thousand dollars ($25,000) plus interest at a specified future date. As a chose in action, Henry Tyler's recorded certificate of judgment did not cause a lien to attach to the treasury

note. Nor did it cause a lien to attach to the proceeds derived from it. *Robinson*, 40 So.2d at 327.

Any other conclusion would disrupt the relative ease by which such interests are transferred causing turmoil in the market for debt instruments and other securities. This is because Henry Tyler's lien assertion, if correct, mandates that a lien is impressed on all bonds, notes, evidences of indebtedness, among others, once and solely by the recording of a certificate of judgment. If this were the case, one dealing in the market for instruments, securities, or other evidences of indebtedness would have to search for recorded liens and judgments before any transfer of an interest in a security or evidence of indebtedness such as a treasury note could be accomplished free of the claims of a judgment creditor. This is not what is or should be required to occur.

### III. But Not To Be Forgotten, Uniform Commercial Code—Investment Securities

Although not raised by either party, an additional basis for sustaining Toffel's objection is provided by Alabama's Uniform Commercial Code—Investment Securities, Ala. Code § 7–8–101 (1993).

In this article unless the context otherwise requires:

(a) A 'security' is an instrument which:

(i) Is issued in bearer or registered form; and

(ii) Is of a type commonly dealt in upon securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment; and

(iii) Is either one of a class or series or by its terms is divisible into a class or series of instruments; and

(iv) Evidences a share, participation or other interest in property or in an enter-

prise or evidences an obligation of the issuer.

Ala.Code § 7–8–102(1)(a) (1993).[4]

■ A treasury note meets the definition of a security set forth in Ala.Code § 7–8–102(1)(a) (1993). It is an instrument which is (i) issued in either bearer or registered form; (ii) of a type commonly dealt in or recognized as a medium for investment and (iii) one of a class or series. *See Morris v. Kaiser*, 292 Ala. 650, 299 So.2d 252, 254 (1974) (A bearer bond is a security under Ala.Code § 7–8–102).

■ Since the treasury note constitutes a security under § 7–8–102(1)(a) (1993), attachment or levy against the note may not be obtained without possession. Ala.Code § 7–8–317(1) (1993); *In re Sandefer*, 47 B.R. 133, 140 (Bankr.N.D.Ala.1985) (A security unless seized is not properly subject to levy and sale under execution and is therefore not encumbered by a lien created pursuant to Ala.Code § 6–9–211). Section 7–8–317(1) provides that

[n]o attachment or levy upon a security or any share or other interest evidenced thereby which is outstanding shall be valid until the security is actually seized by the officer making the attachment or levy but a security which has been surrendered to the issuer may be attached or levied upon at the source.

Ala.Code § 7–8–317(1) (1993).

As a result of Mr. Head's treasury note not having been seized by an officer in the process of enforcing an attachment or levy, no lien was perfected. Simply recording a certificate of judgment does not under Alabama law and did not cause a judgment lien to be perfected against the treasury note owned by Beverly Head, Jr.

### IV. Conclusion [5]

The status of the treasury note is that of (i) a chose in action and (ii) a security under

---

4. Although an amendment to § 7–8–102, Ala. Code § 7–8–102(a)(15) (Supp.1996), became effective January 1, 1997, the unamended version, Ala.Code § 7–8–102(1)(a) (1993), is applicable in this case. Even if the amended code section were to be utilized, the result reached would not change. Under Alabama case law, a treasury note meets the definition of a security set forth in Ala.Code § 7–8–102(1)(a) (1993) and Ala.Code § 7–8–102(a)(15) (Supp.1996).

5. Based on a prepetition assignment of Mr. Head's interest in the note and a subsequent avoidance of the assignment, there is a potential other basis upon which the claim of Henry Tyler may be disallowable: at all relevant times Henry Tyler's lien could not have been perfected against the treasury note. This has not been asserted by Toffel or any party in interest. Because of the Court's ruling, this potential basis for disallowance is not addressed in this opinion.

Alabama's version of the Uniform Commercial Code. Henry Tyler did not obtain the actual or constructive possession required to perfect a lien and Toffel's objection to the asserted secured claim of Henry Tyler is sustained. Based on disallowance of the claim under 11 U.S.C. § 723(c), Henry Tyler Construction Company, Inc.'s claim is disallowed in full.