2014 COA 30

**MILLENNIUM BANK, a Colorado corporation, Plaintiff–Appellant,**

v.

**UPS CAPITAL BUSINESS CREDIT, a Connecticut corporation, Defendant–Appellee.**

**Court of Appeals No. 13CA0557**

Colorado Court of Appeals, Div. III.

Announced March 13, 2014

Bieging Shapiro & Barber, LLP, Duncan E. Barber, Stacey S. Dawes, Denver, Colorado, for Plaintiff–Appellant

Frascona, Joiner, Goodman and Greenstein, P.C., Jordan C. May, Corey T. Zurbuch, Boulder, Colorado, for Defendant–Appellee

Opinion by JUDGE DAILEY

¶ 1 In this dispute over creditors' rights, plaintiff, Millennium Bank (Millennium), appeals the district court's entry of summary judgment in favor of defendant, UPS Capital Business Credit (UPS). We affirm and remand for further proceedings.

## I. Background

¶ 2 This dispute arose out of a series of agreements involving two secured creditors, Millennium and UPS, and a debtor, Superior Plaster and Drywall, Inc. (Superior).

¶ 3 UPS loaned Superior $1,027,000 secured by Superior's assets. Millennium loaned Superior $1,500,000, also secured by Superior's assets. Millennium and UPS entered into an Intercreditor Agreement to establish the respective priority of their secured interests in Superior's assets. Under the Intercreditor Agreement, (1) Millennium had first priority, and UPS second priority,

in Superior's accounts receivable; and (2) UPS had first priority, and Millennium second priority, in Superior's general intangibles.

¶ 4 This case arose when Millennium and UPS disputed their rights to funds awarded to Superior in an arbitration proceeding.

### A. The Arbitration Award

¶ 5 Superior had subcontracted with general contractor Beck Development, LLC (Beck), to perform drywall and paint work as part of the construction of two condominium towers. After Superior had completed a substantial amount of painting, it began noticing problems with the paint provided to it by a company named Akzo Nobel Paints, LLC (Akzo). Superior claimed that Akzo had supplied defective paint, while Akzo argued that Superior's application techniques were to blame. After Superior repainted the project four times at Beck's insistence, without fixing the paint problem, Beck terminated the work of Superior on the project. Beck did so without paying, or agreeing to pay, Superior for the costs it had incurred in repainting the project.

¶ 6 Superior filed suit against Beck and Akzo, claiming, as relevant here, (1) breach of contract by Beck and Akzo; (2) breach of warranty by Akzo; and (3) the right to receive payment on a mechanic's lien it had filed on the condominium towers for work performed under the subcontract. In response, Beck brought various counterclaims against Superior and cross claims against Akzo. The three entities agreed to submit the claims against Akzo to arbitration.

¶ 7 The arbitration panel determined that Akzo's paint was the cause of the paint problems and that Akzo had breached an express warranty to provide paint comparable in performance to a more expensive brand. Thus, the panel awarded consequential damages to both Beck and Superior. As pertains to Superior, the damages encompassed (1) the amount due on Superior's lien for work performed under the subcontract on the condominium towers; (2) Superior's costs for ex-

cess labor and excess materials, in repainting the towers; and (3) punitive damages.

¶ 8 Two weeks later, Superior filed for bankruptcy. Approximately a year afterward, Beck successfully moved, without objection, for dismissal of Superior's claims against it.

### B. The Priority Dispute and Resolution

¶ 9 The funds awarded in the arbitration proceeding became part of Superior's bankruptcy estate.

¶ 10 Millennium and UPS asserted their rights in those funds as secured creditors under Colorado's version of the Uniform Commercial Code (UCC), sections 4–1–101 to 4–11–102, C.R.S. 2013. Neither entity disputed that Millennium was entitled to that part of the funds representing the amount due on Superior's lien on the condominium towers for work performed under the subcontract. Nor did they claim that either of them was entitled to that part of the funds representing punitive damages. Instead, they disputed only the priority rights with respect to the part of the funds representing the excess costs in labor and materials ($638,226.83) incurred by Superior in repainting the towers (the challenged funds).

¶ 11 Millennium asserted that the challenged funds were the proceeds of an account, upon which it had first priority; UPS responded, that they were the proceeds of an intangible right, upon which it had first priority.

¶ 12 Determining that it lacked jurisdiction to adjudicate the priority dispute,[1] the bankruptcy court ordered that the trustee deliver the challenged funds to Millennium and UPS jointly for a state law determination of their interest in the funds. Millennium and UPS placed the challenged funds into an escrow account pending a determination of their respective interests. Millennium then filed the present action for declaratory relief in state district court.

¶ 13 After the parties filed a statement of undisputed facts and cross-motions for summary judgment, the district court entered

---

1. Given that the challenged funds had no value to the estate because of the asserted security

interests, the bankruptcy court allowed the trustee to abandon them.

summary judgment for UPS, concluding that the challenged funds were properly classified as general intangibles rather than accounts. It found that Superior had no contractual right to payment for the repainting work because it and Beck never executed a modification to their subcontract addressing payment for the repainting; and that, without a contractual right to payment from Beck, the challenged funds could not constitute the proceeds of an account held by Superior.

¶ 14 Accordingly, the district court determined that UPS was entitled to a first priority secured interest in the challenged funds, as well as, under the Intercreditor Agreement, an award of attorney fees and costs.

## II. Analysis

¶ 15 Millennium contends that the district court erred in entering summary judgment in favor of UPS. We disagree.

¶ 16 Summary judgment is a drastic remedy, appropriate only where there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Marks v. Gessler*, 2013 COA 115, ¶ 51, —— P.3d ——. We review a summary judgment ruling de novo. *Gibbons v. Ludlow*, 2013 CO 49, ¶ 11, 304 P.3d 239.

¶ 17 The parties agree that the resolution of the case depends upon whether, as a matter of law, the challenged funds are, under Colorado's version of the UCC, proceeds of an "account" (for which Millennium would have the first priority) or the proceeds of a "general intangible" (for which UPS would have the first priority).

¶ 18 As pertinent here, section 4–9–102(a)(2)(ii), C.R.S.2013, defines "[a]ccount'" as "a right to payment of a monetary obligation, whether or not earned by performance ... for services rendered or to be rendered." *See* 8A David Frisch, *Lawrence's Anderson on the Uniform Commercial Code*

§ 9–106: 5 (3d ed. 2013) ("[A] right to payment is an account regardless of whether payment is due immediately or in the future.").

¶ 19 Section 4–9–102(a)(42), C.R.S.2013 defines a " '[g]eneral intangible' " as "any personal property, including things in action, other than" fourteen types of personal property, one of which is "accounts." [2]

¶ 20 A "thing in action," also known as a "chose in action," is " '[a] right to receive or recover a debt, or money, or damages for breach of contract, or for a tort connected with contract, but which cannot be enforced without action.' " *Ford v. Summertree Lane Ltd. Liab. Co.*, 56 P.3d 1206, 1209 (Colo.App. 2002) (quoting *City & Cnty. of Denver v. Jones*, 85 Colo. 212, 214, 274 P. 924, 925 (1929)).

¶ 21 Accordingly, the "general intangible" category of assets has traditionally encompassed proceeds from the right to pursue many types of lawsuits between a debtor and a party other than the interested creditor. *See Bowlen v. Fed. Deposit Ins. Corp.*, 815 P.2d 1013, 1015 (Colo.App.1991) ("[t]he proceeds of a settlement agreement resulting from a claim against a third party are considered general intangibles under the [UCC]"); *Bd. of Cnty. Comm'rs v. Berkeley Vill.*, 40 Colo.App. 431, 436, 580 P.2d 1251, 1255 (1978) ("[I]t has been uniformly held that the proceeds of an anticipated recovery from a cause of action are 'general intangibles.' "); *see also Corcoran v. Land O'Lakes, Inc.*, 39 F.Supp.2d 1139, 1147 (N.D.Iowa 1999) (noting that " 'general intangibles' under the [UCC] has been defined or construed to include lawsuits or claims therein" and listing supporting cases); *First Am. Bank Valley v. George J. Hegstrom Co.*, 551 N.W.2d 288, 292 (N.D.1996) ("Courts uniformly hold that, under the UCC, proceeds of an anticipated recovery from an impending lawsuit constitute general intangibles.").

---

2. As explained in the Official Comment to Colorado's version of the UCC, " '[g]eneral intangible' is the residual category of personal property, including things in action, that is not included in the other defined types of collateral." § 4–9–102, cmt. 5(d). *See also In re U.S. Ins. Grp., LLC,* 429 B.R. 903, 914–15 (E.D.Tenn.2010) (general intangible is a " '[catch-all category' " encompassing " 'miscellaneous types of contractual rights and other personal property which are used or may become customarily used as commercial security' ") (quoting *In re Roy A. Dart Ins. Agency*, 5 B.R. 207, 215 (Bankr.D.Mass.1980)).

¶ 22 However, because, as noted above, the "general intangibles" category does not include "accounts," it would not include "a thing in action" to recover proceeds from "accounts."

¶ 23 Here, the challenged funds are from an arbitration award Superior recovered from Akzo. Superior's claim against Akzo was for a breach of warranty regarding the quality of paint provided by Akzo; it was not based on "a right to payment of a monetary obligation ... for services rendered or to be rendered." *See* 4-9-102(a)(2)(ii) (defining account). Indeed, Superior had not rendered, or offered to render, services for Akzo. Thus, the funds recovered from Akzo could not constitute proceeds from an "account," but, rather, had to be considered the proceeds of a "general intangible." *See Friedman, Lobe & Block v. C.L.W. Corp.*, 9 Wash. App. 319, 512 P.2d 769, 771 (1973) (where a lawsuit involved no sale of goods or rendering of services between the two litigants, no account relationship existed).

¶ 24 Millennium argues otherwise, asserting that because the challenged funds represented damages that may also have been recoverable against Beck under the subcontract, they ought to be considered the proceeds of an "account" Beck had with Superior. We are not persuaded.

¶ 25 In our view, it is not the measure of damages, but the nature of the claim for which damages are awarded, that determines whether recovery from a lawsuit is categorized as proceeds of a "general intangible" or of an "account." *See Merch. Nat'l Bank of Mobile v. Ching*, 681 F.2d 1383, 1386–89 (11th Cir.1982) (evaluating the nature of each claim at issue to determine if the funds obtained from those claims were the proceeds of accounts or general intangibles); *In re Sanner Contracting Co.*, 181 B.R. 465, 474–77 (Bankr.D.Ariz.1995) (applying the *Merch. Nat'l Bank* approach of "review[ing] each

claim to determine how it arose" in deciding if certain settlement funds were the proceeds of an account or a general intangible).

¶ 26 As noted above, the claim for which damages were awarded to Superior here was not against Beck, but against Akzo, and it was not for services rendered by Superior, but for the poor quality of paint provided by Akzo. Neither the arbitration proceeding nor any other proceeding has determined that Beck was liable to Superior for the costs of the excess work Superior performed on the towers.[3] Thus, the claim for which the arbitration panel awarded damages was not based on any "account" Superior had with Beck.

¶ 27 In so concluding, we reject Millennium's reliance on *Helms v. Certified Packaging Corp.*, 551 F.3d 675 (7th Cir.2008), for the proposition that the funds paid by Akzo should be considered proceeds of an account Superior had with Beck. We find no support in *Helms* for that proposition.

¶ 28 In *Helms*, a debtor brought two claims as a result of a fire that damaged its equipment and caused extensive business losses: (1) a claim against a utility company for negligence in maintaining the power line that caused the fire and (2) a claim against its insurance broker for its negligent failure to obtain coverage for business losses. *Id.* at 677. After the debtor settled the claim with the broker, a secured creditor asserted an interest in the settlement funds, arguing that they should be considered proceeds of the equipment allegedly damaged by the utility company. *Id.* The court rejected the creditor's argument. *Id.* at 679.

¶ 29 In determining that the settlement funds could not be considered "proceeds" of the equipment, the *Helms* court analyzed the nature of the claim underlying the settlement. *Id.* at 678. Because the debtor received the settlement funds on a claim for

---

**3.** We are not even able to discern from the terms of the subcontract the basis upon which an "account," *i.e.*, an express agreement to pay the costs for excess work, with Beck could have existed. *Cf. Merch. Nat'l Bank of Mobile v. Ching*, 681 F.2d 1383, 1387 (11th Cir.1982) (implicitly rejecting the notion that a claim for quantum meruit or an implied contract for work

performed could be classified as an account; but, determining that certain funds awarded for work that had to be redone—funds that would otherwise be classified as general intangibles— were actually proceeds of an account because the debtor and its customer had expressly agreed that debtor had a right to be paid for that additional work).

business losses, rather than a claim for damage to the equipment itself, the funds could not be characterized as proceeds from that equipment. *Id.*

¶ 30 *Helms* simply does not support Millennium's argument that the funds a debtor receives on a claim against one party can be attributed to an unrelated contractual relationship the debtor had with another party. Instead, it supports our conclusion that the nature of the underlying claim determines the appropriate characterization of the proceeds from that claim.

¶ 31 Accordingly, we conclude that the district court properly classified the challenged funds as the proceeds of a general intangible, and not as the proceeds of an account.

### III.   Attorney Fees on Appeal

¶ 32 UPS requests—and is entitled to—an award of attorney fees incurred on appeal pursuant to a prevailing party fee provision in the Intercreditor Agreement. Because the district court is better situated to address the necessary factual determinations related to the attorney fee request, we exercise our discretion under C.A.R. 39.5 and direct the court on remand to award UPS a reasonable amount of attorney fees incurred on appeal.

### IV.   Conclusion

¶ 33 The judgment is affirmed, and the case is remanded to the trial court with directions to award UPS a reasonable amount of attorney fees incurred in this appeal.

Terry and Miller, JJ., concur.