299 So.2d 252

**Bobby A. MORRIS**

v.

**Herbert KAISER et al.**

**SC 501.**

Supreme Court of Alabama.

Aug. 22, 1974.

Kenneth L. Funderburk, Phenix City, for appellant.

Smith & Smith, Phenix City, Hatcher, Stubbs, Land, Hollis & Rothschild, Columbus, Ga., for appellees.

McCALL, Justice.

This is an action in detinue instituted by the appellant Bobby A. Morris initially against the Farmers and Merchants Bank of Russell County, a corporation (Bank), to recover in specie fifteen separate securities in bearer form of a total face value of $77,000, consisting of United States Treasury Bonds and Federal National Mortgage Association Capital Debentures, each identified by a specific number.

Through its president, the defendant Bank filed an affidavit disclaiming title to the property sued for and deposing that the appellees, who then were not parties to the suit, claimed these securities. The appellees voluntarily came in and made themselves defendants to the suit, claiming the securities which the Bank had deposited with the clerk of the circuit court. The Bank was thereupon discharged by the court as a defendant. See Code of Ala., Tit. 7, § 933.

The trial of the case proceeded against the present appellees before the judge who

heard the oral testimony of the witnesses and the evidence that was presented in open court without the intervention of a jury. At the conclusion of the evidence, the court found that the issues were triable under the provisions of the "Uniform Commercial Code-Investment Securities," Code of Ala., Tit. 7A, § 8–101 et seq., and entered judgment for the appellees-defendants, holding that the court was satisfied that the appellant did not receive delivery of the bearer bonds, the subject matter of the suit, and that the appellant never acquired both possession and transfer of title to the bearer bonds prior to the death of Dr. Irving R. Kaiser, the person through whom the appellant claimed. The court further held that the appellees, who were the two brothers and sister of Dr. Kaiser, were entitled to the securities and ordered the clerk of the circuit court to deliver them to the appellees' attorney upon his filing in court releases from his clients and the First National Bank of Commerce in New Orleans, Louisiana. The releases were to run in favor of the circuit clerk.

The appellant's assignment of errors 1 through 7 charge in essence that the court erred in dismissing his suit. Assignment 4 asserts error in holding that the appellant did not receive delivery of the securities, and assignment 5, in holding that the appellant did not receive both delivery and transfer of the title to the securities.

The appellant's first contention is that he became a bona fide purchaser for value of the securities and received delivery of them, the concept being that a constructive or symbolic delivery occurred when Dr. Irving R. Kaiser executed and delivered a written bill of sale to him on November 15, 1971, in which Dr. Kaiser warranted and guaranteed his titles to the securities to be clear and free of all claims and encumbrances. The appellant argues that the bill of sale, executed by Dr. Kaiser, treated the securities in the same manner that Dr. Kaiser would have treated a conveyance of a T. V. set or an automobile. The several securities were not actually delivered in physical form to the appellant with the bill of sale. They, at that time, were physically in the custody of the Farmers and Merchants Bank of Russell County where they remained until the Bank deposited them with the circuit clerk. Dr. Kaiser died on December 29, 1971, and the appellant filed this action on January 4, 1972, to recover the securities in specie.

The appellant's correlated argument is that his constructive possession of the securities, with his right to have actual delivery of them, equated their physical delivery to him, and, being without notice of any adverse claim by the appellees, he was a bona fide purchaser for value, free from any adverse claim on the part of the appellees. See Code of Ala., Tit. 7A, § 8–302, defining a bona fide purchaser of a security in bearer form. He asserts that the appellees' defense, setting up an adverse claim, was and is therefore meaningless, and that the entire question of the interpretation of the documents which the appellees introduced at the trial for the purpose of showing their interest or estate in the securities is not material since the total thrust of the appellees' interpretation is an attempt to show that Dr. Kaiser had no title in the securities to convey to the appellant.

■ As found and held by the trial court, we also are of the opinion that the Uniform Commercial Code-Investment Secuties, Code of Ala., Article 8 of Tit. 7A, is applicable and governs this case. The instruments involved are admittedly bearer bonds. A bearer bond is a security which is defined in Section 8–102 as an instrument which is issued in bearer form, is of a type commonly dealt in or recognized as a medium for investment, is of a class or series of instruments, and evidences an obligation of the issuer. A "security" is in "bearer form" when it runs to bearer according to its terms and not by reason of any endorsement. A "bearer" means the person in possession of an instrument, document of title, or security payable to bearer or endorsed in blank. Section 1–201. In order to be a "bona fide purchaser" so as to acquire the rights of his transferor, and in addition, the security free of any

adverse claim, the purchaser must be one who purchased the security for value in good faith and without notice of any adverse claim, and, he must take delivery of the security. See Section 8–302. "Delivery" is defined in Section 1–201 as follows: " 'Delivery' with respect to instruments, documents of title, chattel paper or securities means voluntary transfer of possession." Delivery to a purchaser occurs when he, or a person designated by him, acquires possession of the security. Section 8–313(1)(a).

Contrary to the appellant's insistence that investment securities are to be treated in the same manner under Article 2 as one would deal with a T. V. set or an automobile, Article 2 of the Uniform Commercial Code-Sales expressly excludes securities from its operation. See Section 2–105. We cannot agree therefore that a bill of sale of the securities is sufficient to constitute delivery within the purview of the statute defining a bona fide purchaser of securities.

Article 8, Uniform Commercial Code-Investment Securities, Code of Ala., Tit. 7A, § 8–302, provides as follows:

"A 'bona fide purchaser' is a purchaser for value in good faith and without notice of any adverse claim who takes delivery of a security in bearer form or of one in registered form issued to him or indorsed to him or in blank."

▐ With respect to the appellant's position, it is essential that he must have taken delivery of the securities in bearer form. The delivery alluded to in Section 8–302 means voluntary transfer of possession of the securities. See Code of Ala., Tit. 7A, § 1–201, which contains definitions having applicability to those words or terms therein whenever they are used throughout the Uniform Commercial Code, including Article 8, which deals with Investment Securities. See Sections 8–102 (6).

The applicable portion of Section 8–313 of the Code prescribes when delivery occurs. It states:

"(1) Delivery to a purchaser occurs when

"(a) he or a person designated by him acquires possession of a security; or

\* \* \* \* \* \*

"(d) with respect to an identified security to be delivered while still in the possession of a third person when that person acknowledges that he holds for the purchaser; \* \* \* "

It is quite clear to us that the appellant never became a bona fide purchaser because he never took delivery of the securities by acquiring actual physical possession of them. They remained in the possession of the Bank, and the Bank did not at any time acknowledge that it held the securities for the purchaser. The appellant acquired possession of the purported bill of sale to the securities, but he did not acquire delivery and possession of the securities themselves. Delivery to a purchaser only occurs when he or a person designated by him acquires actual physical possession of a security. See Section 8–313(1)(a).

We think that the case of Kaufman v. Diversified Industries, Inc., 2 Cir., 460 F. 2d 1331, 1334, cert. den. 409 U.S. 1038, 93 S.Ct. 517, 34 L.Ed.2d 487, is an appropriate authority for our conclusion. In *Kaufman,* the court held there could be no delivery of investment securities where physical delivery was not made to the purchaser or to one designated by him. In the opinion the court said:

"[1] The threshold question is whether, as a matter of law, Diversified breached its contractual obligations. There is no dispute that physical delivery of shares did not occur until August 1. Diversified contends that the May 5 letter and other actions it took in preparation for physical delivery constituted 'delivery' of shares for purposes of the agreement. Judge Levet, however, excluded evidence that Diversified took immediate steps to perform including evidence that it notified the New York Stock Exchange (with whom a listing

was pending) that additional shares had been reserved for issuance to the former Datatron shareholders.

"None of the excluded evidence, however, would have turned the issue of delivery into a jury question. Section 1–201 of the Uniform Commercial Code (McKinney 1964), the general definitional section, defines delivery with respect to securities as 'voluntary transfer of possession.' More specifically, § 8–313(1)(a) provides that delivery occurs when a person acquires possession of a security. Although § 8–313(1)(d), relied upon by Diversified, broadens delivery to include possession by a third person for the account of another, that is obviously not the case here. It was conceded that on May 5 there were insufficient authorized shares to pay Kaufman and the other Datatron sellers. It would be straining the meaning of 'possession' to hold that possession passed where the shares allegedly possessed are not even in existence".

In Anderson on the Uniform Commercial Code, Vol. 3, Second Edition, § 8–313 :5, p. 767, "What constitutes delivery to purchaser," it is said:

"Under Article 8, delivery of a security to a purchaser occurs in any of the following circumstances:

"(a) Purchaser's possession. A security is delivered to a purchaser when he or his nominee or agent acquires *actual physical* possession of the security." (Emphasis supplied)

The trial court held there was no delivery to the appellant, and, absent this necessary requirement, the appellant did not become a bona fide purchaser of the bearer securities so as to take them free of adverse claims. We concur in this holding.

■ The appellant also contends that there was an actual delivery of the securities to him by Dr. Kaiser, and his third theory is that delivery was made to him by his designating the Bank to take charge of the securities for him. These contentions are issues of fact that are open to contradiction under the evidence in the case. The trial judge, who heard the evidence ore tenus without a jury, held that the appellant did not receive delivery of these securities and never acquired both possession and transfer of title to the securities in bearer form. We have read the transcript of evidence in the record. This examination satisfies us that there was legal evidence or at least reasonable inferences that could be drawn from the evidence to support the holding of the trial judge that there was no delivery. Accordingly, we will not reverse the case on these two contentions.

In Warren Co. v. Nicholson, 266 Ala. 462, 97 So.2d 543, the court stated the well recognized rule here applicable, as follows:

"We do not think it is necessary or appropriate to discuss in detail the evidence which bears upon the question. It is strictly one of fact. The trial was without a jury on evidence taken before the trial judge. His conclusion should be affirmed unless it is contrary to the great weight of the evidence. See annotations to section 260, Title 7, Code. The evidence has been carefully read and considered, and we have reached the conclusion that the judgment of the trial judge is sufficiently supported and should be affirmed."

The appellant's contention that the trial court erred in its conclusions on factual matters is without merit, and as we have pointed out the court correctly applied the law to the facts as it found them.

An instrument called a "Custodian and Investment" agreement was entered into between the National Bank of Commerce of New Orleans, now the First National Bank of Commerce in New Orleans, Louisiana, Dr. Irving R. Kaiser, and the appellees. The securities were on deposit with and held by the New Orleans Bank to be administered under the terms and provisions of that agreement. The appellant asserts that the agreement is ineffective and.

void, and did not pass title to the appellees, in remainder or otherwise, and does not entitle them to the right of immediate possession of the securities.

■ The answer to this contention is that the appellant failed to prove his own case by showing physical delivery of the securities to him, a factor necessary to constitute him a bona fide purchaser. The general rule applies that the appellant must base his recovery on the state of his own title, or right to possession, and not on the weakness of his adversaries. La Rue v. Loveman, Joseph & Loeb, 220 Ala. 2, 127 So. 241.

Failing to establish such title or right, he cannot recover in detinue irrespective of the state or condition of the title or interest of the appellees in the securities.

■ The appellant next contends that the trial court erred in overruling his demurrer to the appellees' Plea V. The substance of this plea is that the alleged sale of the securities to the appellant was never completed, because there was no delivery of them to the appellant. Any error in overruling the demurrer was immaterial, because the defense set up in the plea was admissible under the appellees' plea of the general issue.

In Commercial Investment Trust, Inc. v. East, 217 Ala. 626, 117 So. 160, the court made this observation in a detinue action with respect to the ruling of the trial court against the appellant's demurrer to the defendant's special plea of non est factum:

"* * * The facts alleged in plea 6 [non est factum] might have been availed of under the general issue, and therefore the ruling as to it was innocuous. * * *"

Plea VI, to which the appellant's demurrer also was overruled, alleges the derivation and course of ownership of the appellees and of Dr. Kaiser in the securities and concludes that such are the property of the appellees. The case was tried upon its merits under the plea of the general issue without taking into consideration this special plea of the appellees. The judgment of the court was that the appellant failed to prove delivery of the securities to him. Under the circumstances, if the judgment was authorized by the facts under the plea of the general issue, which we find to be the situation, the judgment must be referred to that plea, and be affirmed, notwithstanding any error in overruling the demurrer to Plea VI. Andrews v. Hall, 132 Ala. 320, 322, 31 So. 356, 357, makes this observation on the point involved:

"* * * So upon the overruling of the demurrers to the special pleas, not only those pleas, but that of the general issue also, were in the case. If plaintiff could not meet the general issue—could not prove the averments of the complaint which were denied on the part of all the defendants by the plea of the general issue—he could not have recovered in any event. The sustaining of his demurrers to the special pleas could not have helped him. The overruling of them could not have prejudiced him. That he could not meet the general issue by proving the averments of his complaint is concluded by his declination to join issue upon this plea along with the rest—his declination to plead over. As he could not prove his case as laid, the action of the court upon the demurrer involved no injury to him, and, whether erroneous or not furnishes no ground for a reversal of the judgment. * * *"

■ In other words, where the losing party is not entitled to recover in any event, he cannot complain of error allegedly committed in the trial. Cummings v. Caldwell, 276 Ala. 375, 162 So.2d 470.

Further, Rule 45, Revised Rules of Practice in the Supreme Court, Code of Ala., Tit. 7, Appendix, states that no judgment may be reversed by this court in any civil case for error as to any matter of pleading, unless in the opinion of the court, aft-

er an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the appellant. We think that the error complained of falls within the purview of this rule.

From the record it appears that during the examination of the first witness a recess was called. The appellees' attorney apparently deemed it necessary to file special pleas to meet the contemplated evidence. Over appellant's objection, the court allowed the pleas to be filed, conditioned on the costs up to that point, including the cost of the witnesses, being assessed against the appellees. No order to this effect was entered. The court stated that it reserved the matter of costs until after the main proceeding. In the final judgment the court taxed all costs against the appellant, of which action the appellant now complains.

The evidence was not all in when the court permitted the appellees to file their special pleas. When the trial was completed, it developed that the appellant could not recover upon the merits under the general issue. That being the case, there is no reason why the appellant should not be taxed with the costs incurred.

Title 11, § 76, Code of Ala., provides as follows:

"When a party filing a plea 'since last continuance' succeeds thereon, but fails on the plea to the merits, previously filed, he must be taxed with the costs which accrued previous to the filing of the last plea."

But, if the evidence shows, as here, that there was merit in the defendants' (appellees') plea of the general issue so that the plaintiff (appellant) could not have recovered at any rate, then there is no reason why the plaintiff (appellant) should not pay all of the costs of the case. Peck & Bro. v. Karter, 141 Ala. 668, 37 So. 920. There was no error in this aspect of the appeal.

After the trial court rendered judgment against the appellant, he had no such interest in the securities that would entitle him to complain of error in the court's ordering them to be delivered to the appellees' attorney upon release being executed in favor of the clerk of the circuit court in whose custody the securities had been intrusted by court order.

The court ruled that the appellant could not impeach the testimony of a witness on an immaterial matter. There was no error in this action. Clearly, it is not permissible to impeach a witness by testimony of others contradicting his testimony with respect to an immaterial fact, nor by testimony by others that he has made an out-of-court statement that is inconsistent with his testimony concerning an immaterial matter. Blakey's Heirs v. Blakey's Executrix, 33 Ala. 611; Birmingham Electric Co. v. Glenn, 224 Ala. 620, 141 So. 537; Bessemer Land & Improvement Co. v. Dubose, 125 Ala. 442, 28 So. 380; The Law of Evidence in Alabama, McElroy, Vol. 1, § 156.01, p. 363. The record does not reveal whom the appellant would impeach— only "him" is referred to. Further the matter of impeachment is not pointed out. Contrary to the appellant's assertion, the following colloquy, points out that the court did not refuse to allow the appellant to call a witness to impeach the testimony of another. The impeaching witness was not in court and did not answer the call.

"MR. PHILLIPS: We call Lesley Vance.

"THE COURT: You are not trying to set up something on an immaterial matter?

"MR. PHILLIPS: Sir?

"THE COURT: You are not permitted to do that, on an immaterial matter.

"MR. FUNDERBURK: We are going to impeach—

"THE COURT: You can't impeach him on an immaterial matter.

"MR. PHILLIPS: I think we ought to be able to impeach him, Judge.

"THE COURT: That's right, on all material matters, but not on immaterial matters.

"MR. PHILLIPS: Mr. Vance, he's not there?

"THE BAILIFF: No, Sir. Some kind of funeral arrangements.

"THE COURT: I believe that would be a little bit on the immaterial side."

The judgment of the trial court is affirmed.

Affirmed.

COLEMAN, HARWOOD, BLOODWORTH and JONES, JJ., concur.