[1] The record indicates that the appellant's name is "Andrews," although his deceased father was named "Andress."
This is an appeal by the plaintiff, Carlis H. Andrews, in an action against the defendants, Troy Bank and Trust Company and Lessie Dyess Andress, to determine the ownership of 80 shares of stock. Claimants to the stock are Carlis Andrews, as executor and trustee of the estate of John Frank Andress, deceased, and Lessie Dyess Andress, wife of the deceased. Based on a finding that it was the intent of the deceased to transfer to his wife a joint tenancy with right of survivorship interest in the stock, and that that intent was controlling, the trial court held that Lessie Andress is the sole owner of the stock and denied all relief sought in the complaint. We reverse.
The relevant facts are as follows:
John Andress was the owner of 80 shares of the common stock of Troy Bank and Trust Company ("Troy Bank"). Prior to his death, Mr. Andress took the certificates representing the shares of stock to the Troy Bank in order to establish joint ownership in the stock with his wife, Lessie Andress. All of the stock certificates were in the name of John F. Andress, except for one certificate for 20 shares, which included "Mamie Andress" as owner. The certificates state that the shares represented thereby are transferable on the books of the corporation only upon indorsement and surrender of the certificates.
An employee of Troy Bank, Dollie Drinkard, testified that the vice president of the Bank, Mr. Rose, brought the certificates to her and instructed her not to reissue new certificates but, instead, to add "Mr. or Mrs." to the original certificates. This she did. She also testified that Mr. Rose instructed her to "x" out the name of Mamie Andress, who was Mr. Andress's first wife, on the certificate that had that name on it, in addition to adding "Mr. or Mrs." to the certificate.[2] This she also did. As a result of these changes, all of the stock certificates representing the 80 shares were in the name of "Mr. or Mrs. John F. Andress." After making these changes, Ms. Drinkard returned the certificates to Mr. Rose, who in turn returned them to Mr. Andress. Ms. Drinkard further testified that, as instructed, she changed the Bank's stockholders' register to state that the 80 shares were owned by "Mr. or Mrs. John F. Andress" and that she also changed the Bank dividend records so that any dividends were to be paid to "Mr. or Mrs." John F. Andress.
The next time Drinkard saw the stock certificates was after Mr. Andress's death, *Page 989 
when Mrs. Andress indorsed and surrendered the certificates to the Bank for reissuance in her name. Drinkard testified that she reissued them in Mrs. Andress's name, based on the Bank's belief that the stock certificates were joint survivorship certificates and that Mrs. Andress was the surviving tenant. She further testified that Mrs. Andress was also the surviving tenant as to a checking account, a savings account, and two certificates of deposit held by the Bank.
After Mrs. Andress had the shares of stock reissued to herself, Andrews filed a complaint seeking to recover the 80 shares of stock for the benefit of his father's estate. The complaint alleged that Mrs. Andress never acquired title to the stock, that the certificate issued to her is void, and that the stock is the property of the plaintiff.
The trial court heard the case without a jury and entered judgment for the defendants. In so holding, the court concluded as a matter of law that the issue of the ownership of the stock is controlled by the intent of the parties and that the clear intent of the parties would not be defeated on the basis of whether Troy Bank committed a technical error in carrying out that intent.
There are two central issues to the resolution of this appeal. The first is whether the actions taken by Mr. Andress and Troy Bank effectively transferred an interest in the stock to Mrs. Andress. The second is whether, if such action did pass an interest in the stock, parol evidence is admissible to determine the nature of that interest.
 I.
None of the parties in this case has cited to this Court any relevant, controlling law to resolve the question of whether Mrs. Andress acquired any interest in the subject stock. Plaintiff's theory is that Mrs. Andress never acquired title to the stock and that the trial court's order "violates the Statute Law of the State of Alabama relative to the issuance and transfer of corporate stock." The defendants simply argue that a valid and effective transfer of the stock took place even though the old stock certificates were neither indorsed nor fully surrendered by Mr. Andress and although no new certificate was issued.
As an initial matter, we note that defendants cite Alabama Code 1975, §§ 10-2A-1 and 10-2A-40(d), for the proposition that the Alabama Business Corporation Act allows a corporation in its bylaws to determine the procedure for handling transfers of stock on the books of the corporation. Although § 10-2A-1 is clearly inapplicable,[3] § 10-2A-40(d) does provide that "Shares or interest in the stock of corporations are personal property, transferable on the books of the corporation in the manner provided by law." Even if we were to construe that section as allowing a corporation to determine for itself the internal procedures for handling transfers of stock on its books, that would not answer the central question presented — whether Mrs. Andress ever acquired an interest in the stock. It must therefore be determined what law governs the issue of transfer of title to stock.
Section 10-2A-40(d) of the Alabama Business Corporation Act is derived from Acts of Alabama 1959, Act No. 414, p. 1055, which adopted the Model Business Corporation Act. At the time of the adoption of Act 414, the law governing the transfer of title to stock certificates and to the shares represented thereby was the Uniform Stock Transfer Act, as codified in Alabama Code 1940, Title 10, §§ 48-69. It is clear that the 1959 Act adopting the Model Business Corporation Act neither repealed nor altered the law of stock transfers under Alabama's version of the Uniform Stock Transfer Act (hereinafter USTA). The USTA continued to be the law governing transfer of title to stock until January 1, 1967, when the Uniform Commercial Code became effective. See Acts of Alabama 1965, Act No. 549, p. 811. *Page 990 
With the adoption of the Uniform Commercial Code, the legislature expressly repealed the USTA. See Acts of Alabama1965, Act No. 549, p. 1008. The law now governing the transfer of title to shares of stock is found in Article 8 of the Uniform Commercial Code dealing with investment securities, as codified in Alabama Code 1975, § 7-8-101, et seq. We reach this conclusion not only because the legislature repealed the USTA with the adoption of the UCC, but also, because of the clear language contained in Article 8 ("Investment Securities"). The official comment to § 7-8-101 ("Short Title") states that "[this] Article . . . covers certificates of stock, formerly provided for by the Uniform Stock Transfer Act." The comment also states that "the instruments covered are those included in the definition of security in Section 7-8-102."
Section 7-8-102 defines "security" as follows:
 "(1) In this article unless the context otherwise requires:
"(a) A 'security' is an instrument which:
 "(i) Is issued in bearer or registered form; and
 "(ii) Is of a type commonly dealt in upon securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment; and
 "(iii) Is either one of a class or series or by its terms is divisible into a class or series of instruments; and
 "(iv) Evidences a share, participation or other interest in property or in an enterprise or evidences an obligation of the issuer."
Section 7-8-102 further defines a "security in registered form" as follows:
 "(c) A security is in 'registered form' when it specifies a person entitled to the security or to the rights it evidences and when its transfer may be registered upon books maintained for that purpose by or on behalf of an issuer or the security so states."
We are of the opinion that shares of stock are "securities" within the meaning of § 7-8-102, and, therefore, that the issue of title to the stock is governed by the provisions of UCC Article 8 dealing with investment securities. See, generally, Annot., "What is a 'Security' under UCC Article 8," 11 A.L.R. 4th 1036 (1982); cf. Morris v. Kaiser, 292 Ala. 650,299 So.2d 252 (1974) (bearer bond is security within meaning of UCC 8-102).
Under § 7-8-309, a transfer of an investment security to a purchaser requires both an indorsement and a delivery of the security: "An indorsement of a security whether in special or in blank does not constitute a transfer until delivery of the security on which it appears or if the indorsement is on a separate document until delivery of both the document and the security." Section 7-8-301 further provides in (1) that "[u]pon delivery of a security the purchaser acquires the rights in the security which his transferor had," and in (3) that "[a] purchaser of a limited interest acquires rights only to the extent of the interest purchased."[4] From the foregoing Code sections it is readily apparent that an interest in a security does not pass until delivery of the security. "Delivery" is defined in the Code as "voluntary transfer of possession," Section 7-1-201(14), and occurs when the purchaser (transferee) or someone on his behalf acquires actual possession of the security. Section 7-8-313(1)(a); Morris v. Kaiser, 292 Ala. 650, 299 So.2d 252 (1974).
In the present case, the fact that Mr. Andress never indorsed the stock certificates is of no consequence.[5] Nonetheless, *Page 991 
the fact remains that Mrs. Andress never received actual physical possession of the stock certificates.[6] In the usual case, actual physical possession of the security by the purchaser is necessary to complete a transfer of ownership in the security. Morris, supra. However, in the present case, Mr. Andress did not attempt to bestow on his wife complete ownership of the stock but, rather, he sought to make her a co-owner of the stock. In this regard, we agree with the court in Ogilvie v. Idaho Bank Trust Co., 99 Idaho 651,582 P.2d 215 (1978):
 "While the requirement of physical delivery contained in Article 8 may serve a valid evidentiary purpose in the case of a sole owner, where, as here, there is more than one listed owner, the requirement that the new owners personally receive physical possession of the stock certificates to constitute a valid transfer is not applicable because both joint tenants cannot enjoy possession simultaneously. Robison v. Fickle, 340 N.E.2d 824
(Ind.Ct.App. 1976). This result is especially appealing because possession by one co-owner is deemed possession by all." (Citations omitted.)
Ogilvie, 582 P.2d at 219.[7] We, therefore, hold that the actions taken by Mr. Andress in surrendering the stock certificates to Troy Bank, the steps taken by Troy Bank to effect a transfer on its books in favor of both Mr. and Mrs. Andress, and the subsequent delivery of the stock certificates to Mr. Andress satisfied the delivery requirements of § 8-309 and, hence, that Mrs. Andress did acquire an interest in the 80 shares of stock. In addition to this conclusion, there is another reason why we believe that Mrs. Andress acquired an interest in the stock.
Defendants-appellees argue that under all the circumstances, the actions taken by Mr. Andress and Troy Bank were effective to transfer an interest in the stock to Mrs. Andress. Although no legal theory has been argued to support this contention, we construe the argument to mean, at least, that Mrs. Andress acquired an interest in the stock by equitable assignment. Is such a theory even available since the adoption of the UCC? We believe that it is. In this regard, we find the case ofJohnson v. Johnson, 273 Ala. 688, 144 So.2d 12 (1962), to be quite persuasive.
Johnson involved an action in equity by the alleged joint owner of corporate stock to compel the sale of the stock and the division of the proceeds among the alleged joint owners. The argument was raised that there was never any valid transfer of the stock under the Uniform Stock Transfer Act (USTA), Alabama Code 1940, Title 10, § 48.[8] In response, this Court held that the transfer of corporate stock, in the strict or technical sense, was not involved and that the USTA was without controlling influence. We stated that *Page 992 
"[T]he determinative question is the equitable ownership of, or title, to the stock." Johnson, 273 Ala. at 692,144 So.2d at 16. Citing Nashville Trust Co. v. Cleage, 246 Ala. 513,21 So.2d 441 (1945), this Court concluded as a matter of law that the rule of equitable assignment of corporate stock was not abrogated by the adoption of the Uniform Stock Transfer Act. In the present case, we conclude that the adoption of UCC Article 8 ("Investment Securities") also did not abrogate the equitable principles established in prior decisions of this Court that, as between the parties, there may be a transfer of ownership of stock in a corporation where the owner presently intends to make such a transfer even though there is some technical defect in the mode of transfer. See, Johnson v. Johnson, 273 Ala. 688,144 So.2d 12 (1962); Nashville Trust Co. v. Cleage, 246 Ala. 513, 21 So.2d 441 (1945); Davis v. Wachter, 224 Ala. 306,140 So. 361 (1932); Birmingham Trust Savings Co. v. Cannon,204 Ala. 336, 85 So. 768 (1920); McGowin v. Dickson, 182 Ala. 161,62 So. 685 (1913); Duke v. Cahawba Navigation Co., 10 Ala. 82
(1846). Cf. Hudgens v. Tillman, 227 Ala. 672, 151 So. 863
(1933). Other courts considering the question have likewise concluded that the UCC speaks only to legal title and neither abrogates nor embraces the broad field of equitable rights and interests and the methods of their transfer. See, e.g., Crow v.Newspaper Dealer Supply, Inc., 603 F. Supp. 847 (E.D.Mo. 1985) (construing Mississippi UCC); Tanner v. Robinson, 411 So.2d 240
(Fla.Dist.Ct.App. 1982); In Re Stewart Becker, Ltd. v.Horowitz, 94 Misc.2d 766, 405 N.Y.S.2d 571 (Sup.Ct. 1978);Phillips v. Zimring, 284 So.2d 233 (Fla.Dist.Ct.App. 1973), cert. denied, 293 So.2d 359 (Fla. 1974).
In Johnson, supra, we quoted Venturi v. Silvia, 197 Ala. 607,73 So. 45 (1916), as follows:
 "In equity no particular form is essential to the validity of an assignment; it may be in writing or by parol. It is sufficient if there is an intentional transfer or making over of the subject matter, conferring a complete and present right in the assignee."
Johnson, 273 Ala. at 692, 144 So.2d at 16. We also quoted with approval the following language from Whitney v. Nolan,296 Mass. 419, 6 N.E.2d 386, 389 (1937):
 "Where the owner of stock, intending to make an absolute transfer, for lack of indorsement or because of some other defect in the mode of transfer, fails to transfer the legal title, it is held that by the transfer the equitable title goes over to the transferee * * * even though the provisions of that act [Uniform Stock Transfer Act] relative to transfers are not compiled with, and though the act purports to state the only method of transfer."
Johnson, 273 Ala. at 694, 144 So.2d at 18. We hold that the actions taken by Mr. Andress constituted a valid equitable assignment of an interest in the stock of Troy Bank to Mrs. Andress even though he never actually indorsed the certificates[9]
and never physically delivered the certificates to Mrs. Andress. The evidence clearly supports the trial court's finding that it was the intent of Mr. Andress to make Mrs. Andress a co-owner of the stock in question. Moreover, there was, at least, a constructive delivery of the stock to Mrs. Andress. See Ogilvie v. Idaho Bank Trust Co., supra. Mrs. Andress therefore acquired an equitable, if not a legal, interest in the stock as a co-owner.
Having determined that Mrs. Andress is a co-owner of the 80 shares of stock, it remains to be seen whether her interest is that of a tenant in common or, rather, that of a joint tenant with right of survivorship. *Page 993 
 II.
Alabama Code 1975, § 35-4-7, provides:
 "When one joint tenant dies before the severance, his interest does not survive to the other joint tenants but descends and vests as if his interest had been severed and ascertained; provided, that in the event it is stated in the instrument creating such tenancy that such tenancy is with right of survivorship or other words used therein showing such intention, then, upon the death of one joint tenant, his interest shall pass to the surviving joint tenant or tenants according to the intent of such instrument. This shall include those instruments of conveyance in which the grantor conveys to himself and one or more other persons and in which instruments it clearly appears that the intent is to create such a survivorship between joint tenants as is herein contemplated." (Emphasis added.)
Nothing in the stock certificates in question states or implies that the named owners, Mr. and Mrs. Andress, held the stock as joint tenants with right of survivorship. Nonetheless, Mrs. Andress and Troy Bank argue that under Parr v. Godwin,463 So.2d 129 (Ala. 1984), parol evidence was admissible to show that Mrs. Andress acquired a joint tenancy with right of survivorship interest in the stock. This evidence consists of the testimony of Mrs. Andress to the effect that Mr. Andress intended to create a survivorship estate in the stock in her favor. Appellees argue that the stock certificates in question are incomplete on their face as to their method of ownership and, therefore, that the trial court was correct in concluding that the testimony of Mrs. Andress was admissible to show that it was the intent of Mr. Andress to transfer to his wife a joint tenancy with right of survivorship interest in the 80 shares of Troy Bank stock. We disagree.
In Parr v. Godwin, 463 So.2d 129 (Ala. 1984), the ownership of funds in a joint checking account was at issue. The account was in the name of "C.M. Kelly or Frances Godwin." The checking account signature card reflected the offering of eleven different kinds of accounts. Designation of the proper kind of account was accomplished by placing an "x" in a box to the left of the name of the kind of account requested. No such designation of the kind of account was made on the card. This Court held that the ambiguity created by the incompleteness of the signature card was subject to clarification and being made certain by parol evidence. We concluded that the trial court inParr was thus correct in receiving parol evidence to the effect that the bank account was held in joint tenancy with right of survivorship.
Unlike the incomplete signature card in Parr v. Godwin, there is nothing incomplete or ambiguous about the stock certificates at issue here. All of the certificates state that "Mr. or Mrs. John F. Andress" are the owners of the shares of stock represented by the certificates. Contrary to the appellees' position, the fact that the certificates do not contain any reference regarding the method of ownership does not make the certificates incomplete.
 "It should be clear that under § 35-4-7 a grant of personal property, as in this case, or a grant of real property to two or more persons creates in them a tenancy in common with respect to such property unless the proviso in that statute is complied with; that is, the instrument creating the estate must clearly indicate that a joint tenancy with right of survivorship was intended. It has consistently been stated that an instrument creating a joint tenancy with right of survivorship must clearly express the incident of survivorship if such was intended by the parties. Smith v. Smith, 418 So.2d 898 (Ala. 1982); Durham v. Durham, 400 So.2d 751, 752 (Ala. 1981); Nunn v. Keith, 289 Ala. 518, 268 So.2d 792 (1972)."
Parr v. Godwin, 463 So.2d 129, 134-35 (Ala. 1984) (Chief Justice Torbert, dissenting). This Court stated in Farmer v. Farmer,455 So.2d 1 (Ala. 1984):
 "The incidence of ownership being the same in this case as in Lovett [450 So.2d 116 (Ala. 1984)], (i.e., the names of the joint owners being separated by the word *Page 994 
'or,' and with no intention of the parties 'stated in the instrument creating [a right of survivorship]'), and the applicable statute being the same, perforce the result is the same. Cf., Dougherty v. Hovater, 447 So.2d 185 (Ala. 1984) (holding that 'the designation on the stock certificates purporting to create [a tenancy by the entirety] constituted an expression of an intent to create a survivorship estate.')"
455 So.2d at 2. Because there is nothing in the stock certificates indicating an intention to create a survivorship estate, the trial court erred to reversal in admitting the parol evidence offered by the appellees to show that it was the intent of Mr. Andress to create a joint tenancy with right of survivorship estate in himself and Mrs. Andress.Farmer, supra; Ex parte Lovett, 450 So.2d 116 (Ala. 1984); Parrv. Godwin, 463 So.2d 129 (Ala. 1984).
Based on the foregoing, we conclude that Mrs. Andress is not entitled to all of the shares of stock, because the stock certificates did not create a survivorship estate in her. Upon Mr. Andress's death, one-half of the shares passed as a part of his estate.
REVERSED AND REMANDED.
MADDOX, JONES, SHORES, BEATTY, ADAMS, HOUSTON and STEAGALL, JJ., concur.
[2] No issue is presented as to the legality or effect of striking the name of Mamie Andress from the original certificate representing 20 shares of stock.
[3] Alabama Code 1975, § 10-2A-1 provides:
 "This chapter shall be known and may be cited as the Alabama Business Corporation Act.
 "Corporations may be organized under this chapter for any lawful purpose or purposes."
[4] Alabama code 1975, § 7-1-201(33), defines "purchaser" as "one who takes by purchase." Section 7-1-201(32) provides that " 'purchase' includes taking by sale, discount, negotiation, mortgage, pledge, lien, security interest, issue or reissue, gift or any other voluntary transaction creating an interest in property."
[5] Under § 7-8-307, indorsement of the security by the owner is not essential to a completed transfer: "Where a security in registered form has been delivered to a purchaser without a necessary indorsement he may become a bona fide purchaser only as of the time the indorsement is supplied, but against thetransferor the transfer is complete upon delivery and thepurchaser has a specifically enforceable right to have anynecessary indorsement supplied." (Emphasis added.)
[6] The record is not clear as to what exactly Mr. Andress did with the altered certificates and when Mrs. Andress came into possession of them. However, we do learn from the record that the certificates were put into a safe deposit box and that, after Mr. Andress's death, Mrs. Andress "cleaned out" the box, thus coming into possession of the stock certificates.
[7] Alabama law is in accord that possession by one co-owner is deemed possession by all. See, e.g., Porter v. Porter,472 So.2d 630 (Ala. 1985).
[8] That former Code section provided that: "Title to a certificate and to the shares represented thereby can be transferred only, by delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby, or by delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby. Such assignment or power of attorney may be either in blank or to a specified person. The provisions of this section shall be applicable although the charter or articles of incorporation or code of regulations or by-laws of the corporation issuing the certificate and the certificate itself provide that the shares represented thereby shall be transferable only on the books of the corporation or shall be registered by a registrar or transferred by a transfer agent." Cf. Alabama Code 1975, §§ 7-8-301, 7-8-307, 7-8-309, 7-8-313.
[9] We note that § 7-8-307, supra, n. 4, appears to be a codification of the equitable transfer rule. That Code section is similar to Alabama Code 1940, Title 10, § 56 (USTA § 9). We have found only one Alabama case citing that Code section —Livingston v. Powell, 257 Ala. 38, 57 So.2d 521 (1952). Although that case does not speak directly to the equitable transfer of title where an owner attempts to transfer stock but fails to indorse the certificates, courts from other states construing identical statutory provisions have concluded that in such a situation, the transferee does acquire equitable title to the shares with a right to compel indorsement. See, e.g., Johnson v. Johnson, 30 Mass. 24, 13 N.E.2d 788 (1938).