SHORES, Justice.
This case contests the settlement of an estate. The plaintiff, Judy Primm, one of the three heirs of J.D. Primm, filed a complaint in Jackson County against her brother, Gene Primm, as executor of the estate. She alleged that certain stock certificates that had been transferred to her name had become her property and that the executor was unlawfully retaining possession of them. The trial court ruled that she was entitled to one-third of the estate, and that the executor was allowed to withhold the delivery of the stock certificates if necessary to assure that each beneficiary received a one-third share. We affirm.
J.D. Primm died on April 6, 1990, leaving a will under which his son Gene was named executor, and his three children, Gene, Judy, and Glenn, were named equal beneficiaries. At the time of his death, J.D. Primm owned substantial assets, including real estate, 1696 shares of stock in Torch-mark Corporation, 134 shares of stock in United Investors Management Corporation, cash in banking accounts, insurance, and *1299 personal property. After his death, his children met and agreed that they would divide the property without filing the will in the probate court. A portion of their informal agreement was reduced to writing and signed by all three children. By virtue of the agreement, real property valued at $77,000 was to be transferred to Judy Primm, and each of the two brothers was to receive the same amount of money or other assets from the estate to offset this transfer. Gene and Glenn Primm each transferred his interest in the real property to Judy pursuant to their agreement.
Gene Primm then began to assemble and divide the assets of the estate. Apparently, he first decided that he should divide the stock three ways. Accordingly, he notified Torchmark and United Investors Management to reissue the certificates of stock on an equal basis, directing that 565 shares of Torchmark and 44 shares of United Investors be issued to Judy Primm. When the stock was received by Gene Primm, he refused to deliver it to Judy, because by this time he realized that if he delivered the stock to her, she would then receive more than one-third of the assets of the estate, because he and Glenn had transferred their interest in the real property to her.
Judy Primm disagreed with his interpretation of the agreement of the parties and began a proceeding in the probate court to force the probate of the will. Gene was appointed executor on March 12, 1991. The administration of the estate was transferred to the circuit court, where she filed a complaint alleging that the executor had refused to deliver the stock to her. The Jackson County Circuit Court held a hearing, during which the plaintiff argued that there had been an irrevocable transfer to her under the Uniform Commercial Code, § 7-8-101 et seq., when the stock was placed in her name, even though she did not have possession of it. On July 30, 1992, the trial judge, the Honorable Robert L. Hodges, issued his order, which reads in pertinent part:
“In June of 1990, the executor had the deceased’s shares of stock in Torchmark Corporation and in United Investors Management Company divided into three equal shares to each child of the deceased. Stock certificates, at his request, were re-issued by those companies and the executor received certificates issued in the name of Judith P. Bufford and Willis L. Bufford [the Buffords are Judy Primm and her former husband] for 565 shares of common stock of Torch-mark Corporation and 44 shares of common stock of United Investors Management Company. The executor retains those certificates and contends that he is not obligated to deliver them to Judy Primm, since she has already received in excess of her entitlement in the estate. The question arises, therefore, as to whether the action of the executor in having certificates issued to Judy Primm and her former husband, who has assigned his right in them to her, is an irrevocable transfer. The court has been cited to no authority other than § 10-2A-40(c), [Ala.Code 1975], which provides in part simply that the shares of stock in a corporation shall bear the name of the person to whom it is issued. The statute resolves nothing on the issue of ownership here involved. Neither is there sufficient evidence for the court to determine whether this transfer comes within the scope of any provisions of the Uniform Commercial Code relating to transfer of ownership in securities. There is a split of authority in the country over whether re-issuance of the stock to the transferee on the corporation’s books and records, with the transferor retaining possession of the new certificate is sufficient to complete the transfer. [An-not.,] 28 A.L.R.2d 1171, § 5. Alabama does not appear to have clearly chosen one view or the other, and this court is cited to no case so holding. On the basis of the language of the Supreme Court of Alabama in Hudgens v. Tillman, 227 Ala. 672, 151 So. 863 (1934), a case involving somewhat similar facts, this court concludes, that absent application of a relevant statute, the transfer of the stock in both companies from Gene Primm acting as executor to Judy Primm is not complete without the necessary *1300 intent and physical delivery of the certificate to her. The intent of the executor, from all the evidence, was to execute the transfer to Judy Primm as part of what he assumed to be her one-third share of estate assets....
“Whether the executor has the duty to deliver the certificates to Judy Primm now to complete the transfer, depends on whether, based on the rulings in this order, she would or would not receive more than her one-third share of the estate assets. Counsel for both parties assert in brief and other documents that she had received, prior to this order, $84,-000. However, there was testimony from the executor at trial that, since the filing of his accounting of disbursements to Judy Primm in that sum, as of November 26, 1991, further disbursement of insurance proceeds had been made. The parties do not dispute that the ‘insurance’ proceeds were assets included as estate assets. Total insurance proceeds shown on the amended inventory are $57,204.90. As of the last accounting of the executor showing disbursement to Judy Primm, only $1,000 of insurance proceeds had been distributed to her....
“In summary, the executor has the duty to amend his accounting of inventory and disbursements to reflect the changes specified by this order, and also to reflect what estate assets, as specified by this order, have been disbursed to Gene Primm and Glenn Primm. If the total disbursements made to Judy Primm to date, together with the further disbursement of the First American Money Market trust account to her exceed her one-third share of her father's estate, then the executor has no duty to convey to her any of the subject stock or other assets. If such disbursements to her total less than her one-third share, then the executor has the duty to convey to her sufficient shares of stock, or at her option, an equivalent sum of money, to make up the difference.”
Judy Primm appeals this portion of the trial court’s order. She contends that the trial court erred in holding that delivery of the stock is not complete without the necessary intent and physical delivery of the certificates to her. She argues that there was an irrevocable transfer to her under the Uniform Commercial Code, § 7-8-101 et seq. In support of her contention, she cites us to Andrews v. Troy Bank & Trust Co., 529 So.2d 987 (Ala.1988), wherein we stated:
“We are of the opinion that shares of stock are ‘securities' within the meaning of § 7-8-102, and, therefore, that the issue of title to the stock is governed by the provisions of UCC Article 8 dealing with investment securities.”
529 So.2d 987 at 990. Judy Primm argues that under § 7-8-313(l)(a), delivery occurs when “[a purchaser] or a person designated by him acquires possession of a security” and that therefore delivery to her brother was delivery to her. She is in error, because under § 7-8-313(l)(a) delivery “to a purchaser" occurs when “[he] or a person designated by him acquires possession of a security.” The plaintiff is not a purchaser under § 7-8-302 of the UCC; she is a beneficiary under a will. We note that we further stated in Andrews v. Troy Bank & Trust Co. that “the UCC speaks only to legal title and neither abrogates nor embraces the broad field of equitable rights and interests and the methods of their transfer.” Id. at 992.
We have carefully examined the record in this case and conclude that the trial judge did not err in his holding. It is clear from the wording of the will that it was the intent of J.D. Primm that each of his children receive one-third of the estate. This does not mean each group of assets divided by three, but one-third of the total estate. Further, the Primms’ agreement clearly states that each brother will receive “assets or money in an amount equal to the appraisal value of each parcel of real property totalling $77,000” to offset the transfer of his interest in the real property to the plaintiff. The trial judge correctly concluded that the assets Judy Primm receives should total one-third of the estate and that the executor should be allowed to correct any mistake he has made in prematurely *1301 changing the names on the stock certificates so that each of the three beneficiaries will receive one-third of the estate. City National Bank of Birmingham v. Andrews, 355 So.2d 341 (Ala.1978); Gafford v. Kirby, 512 So.2d 1356, 1360 (Ala.1987).
AFFIRMED.
HORNSBY, C.J., and MADDOX, HOUSTON and KENNEDY, JJ., concur.