THOMPSON, Presiding Judge.
•. Citizens, Bank. & Trust (“Citizens”) appeals from a judgment of the Bessemer Division of the Jefferson Circuit Court (“the trial court”) determining that a- security interest Citizens held in certain stock was subordinate to the rights Piggly Wiggly Alabama Distributing Company, Inc. (“Piggly Wiggly”), had in that same stock as a lien creditor. Because the amount of the lien far exceeded the'value 'of the stock, the trial court found, Citizens had no rights in the stock.
The record indicates the following facts relevant to this appeal. James David White was the president of DP Families, LLC (“DP Families”), and his brother, Patrick E. White, was its secretary. According to the affidavit of Matthew C, Peters, vice president and finance director of Piggly Wiggly, Piggly Wiggly entered into an agreement in November 2005 with DP Families to' supply DP Families with inventory for resale at its retail grocery stores. The Whites executed guaranty agreements in favor of Piggly Wiggly in November 2005 and again in November 2012.
On April 3, 2014, DP Families obtained a loan- in the amount of $180,000 from Citizens to buy into a grocery cooperative owned by Associated Wholesale Grocers (“AWG”). AWG is a wholesaler of grocery and supermarket products. In his affidavit, Patrick White said that the loan was primarily for the purchase of stock in AWG and to purchase inventory. He said that the stock purchase was a requirement un *471 der the membership agreement between AWG and -DP Families (“the membership agreement”), allowing DP Families to become an AWG retail member. The-Whites, in their respective roles with DP Families, signed a promissory note and a security agreement as collateral for the loan. The security agreement specifically defined the collateral as “Certificate Number 9945: 15 Shares of Class A Capital stock issued by [AWG].”
On April 4, 2014, DP Families and AWG executed the membership agreement! One of the terms of the membership agreement provided that AWG would retain possession of the stock purchased by DP Families as security for all DP Families’ obligations under the membership agreement. The provision also stated: “No third party shall' be given any security interest in any [AWG] equity without the prior written consent of [AWG].” In their respective affidavits, the Whites testified that on April 4, 2014, they gave handwritten instructions to Citizens to wire $26,550 to AWG for DP Families’ purchase of the 15 shares of stock represented by Stock Certificate Number 9945 (“the stock certificate”). AWG then provided DP -Families with a receipt (“the receipt”) for the stock certificate. The receipt provided that it was .given in lieu of the stock certificate, that the stock certificate was pledged to secure DP Families’ obligations to AWG, and that it would be held by AWG.
In his affidavit, David White testified that he took the receipt and delivered it to Citizens. He and his brother, Patrick White, both testified that it was their understanding that the AWG stock; was to serve as the collateral for the loan from Citizens to DP Families. Danny Riggs, vice president of Citizens, testified by affidavit that he received the receipt and that he, too, understood that the AWG stock was to serve as collateral for the loan to DP Families.
Meanwhile, DP Families defaulted' on its financial obligations to Piggly Wiggly. By a letter dated February 6, 2014, counsel for Piggly Wiggly gave notice of default and demand for' payment to DP Families and to the Whites as guarantors of DP'Families for the failure to pay the amounts owed to Piggly Wiggly. After failing to receive the payment demanded, Piggly Wiggly filed a civil action against DP Families and the Whites. Ultimately, Piggly Wiggly obtained a default judgment against DP Families in the amount. of $477,569.26. On December 5, 2014, Piggly Wiggly recorded the default judgment.
Piggly Wiggly filed a process of garnishment directed to AWG to collect the judgment against DP Families. AWG, as the garnishee, answered, stating that it was in possession of the following:
“Stock value upon redemption in January 2015: approximately $21,802,73; Patronage: (i) cash portion payable in March ' 2015: approximately $2,309.35, (ii) patronage certificate with estimated maturity in 2020 (or as determined by garnishee’s Board of Directors): approximately $1,539.57.”
Piggly Wiggly then filed a motion for an order bn the garnishment. On December 15, 2014, the trial court entered an- order on that motion, directing AWG to pay into court the amounts AWG had from the stock redemption in January 2015 and the cash otherwise due to DP Families for patronage value.
DP Families aiso defaulted on its financial obligations to Citizens. In his affidavit, Riggs said that- Citizens began collection efforts of its own and that, in February 2015, he contacted AWG to inquire about redeeming the.stock. That was when he learned that Piggly Wiggly had garnished the stock. On April 17, 2015, Citizens *472 moved to intervene in Piggly Wiggly’s action against DP Families, asserting that it had a security interest in .the stock.. The motion to intervene was granted.
On February 10, 2016, after a hearing to determine who had priority, the trial court entered a final judgment in which it found that Citizens had not filed a filing statement on the stock, it had not taken “control” of the stock pursuant to § 7-9A-314, Ala. Code 1975, and it had not taken delivery of the stock certificate pursuant to §§ 7-9A-313 and 7-8-301, Ala. Code 1975. As to the issue of whether Citizens took delivery of the stock certificate, the trial court found that Citizens presented no evidence to support that AWG was holding the stock certificate for Citizens. In fact, the trial court found that “the undisputed facts support the conclusion that AWG held the Stock Certificate for its own benefit as a secured creditor” and concluded that AWG did not acknowledge that it held the stock certificate for Citizens. The trial court pointed out that the date of service of a writ of garnishment is the date on which priority among various claimants is determined. Accordingly, the trial court determined, Citizens did not perfect its security interest as required by § 7-8-301 and, thus, its rights were subordinate to Piggly Wiggly’s rights as a lien creditor. The trial court then denied Citizens any portion of the value of the stock.
Citizens filed a timely motion to alter, amend, or vacate the judgment, which the trial court denied on April 19, 2016. Citizens then appealed to this Court.
On appeal, Citizens contends that the trial court erred in finding that Piggly Wiggly’s security interest in the stock was superior to its own security interest. Specifically, ' Citizens asserts that it had perfected its security interest in the stock because, it says, it was a purchaser of the stock and because, it says, AWG acknowledged that it was bolding the stock for Citizens.[1]
The facts in this case are largely undisputed.
“Where material facts are not in dispute and the ‘appeal focuses on the application of the. law to. the facts, no presumption of correctness] is accorded to the trial'court’s judgment. Therefore, we review de novo the application of the law to the facts.... ’ Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379 (Ala. 1996).”
Continental Cas. Co. v. Plantation Pipe Line Co., 902 So.2d 36, 45 (Ala. 2004).
Citizens argues that it perfected its security interest in the stock certificate on April 4, 2014, when.the .Whites, who are officers of DP Families, delivered the receipt they had received from AWG to Riggs. Upon perfection of its security interest, 'Citizens says, its interest in the stock became superior to 'that of Piggly Wiggly’s lien, which was not effective until the writ of garnishment issued in December 2014.
*473 Because the stock was represented by a certificate, it is known as a “certificated security.” § 7-8-102(a)(4), Ala. Code 1975. “A security interest in a certificated security in registered form is perfected by delivery when delivery of the certificated security occurs under Section 7-8-301 and remains perfected by. delivery until the debtor obtains possession of the security certificate.” § 7-9A-313(e), Ala. Code 1975.
Section 7-8-301 provides, in part:
“(a) Delivery of a certificated security to a purchaser occurs when: • '
“(1) the purchaser acquires possession of the security certificate;
“(2) another person, other than a securities intermediary, either acquires possession of the security certificate on behalf of the purchaser or, having previously acquired possession of the certificate, acknowledges that it holds for the purchaser; or
“(3) a securities intermediary acting on behalf of the purchaser acquires possession of the security certificate, only if the certificate is in registered form and is (i) registered in'thé name of the purchaser, (ii) payable to the order of the purchaser, or (iii) specially indorsed to the purchaser by an effective indorsement and has not been indorsed to the securities intermediary or in blank.”
(Emphasis added.) The Official Comment to § 7-8-301 states: “Paragraph (2) contains the general rule that a purchaser can take delivery through another person, so long as the other person is actually acting on behalf of the purchaser or acknowledges that it is holding on behalf of the purchaser.”[2]
Citizens asserts that delivery was complete, and thus its interest was perfected, when the Whites gave the receipt to Riggs. In support of its assertion, Citizens contends that equitable principles require that, under the circumstances of this case, the receipt is to be treated as the equivalent of the stock certificate. We find the two opinions it cites as authority for that contention—Andrews v. Troy Bank & Trust Co., 529 So.2d 987 (Ala. 1988), and Johnson v. Johnson, 273 Ala. 688, 144 So.2d 12 (1962)—inapposite, however.
In Butler v. MaxiStorage, Inc., 33 So.3d 1221 (Ala. Civ. App. 2009), a case in which delivery of securities was at issue, this court discussed the holdings of Andrews and Johnson.
“In Andrews, John Andress, who owned shares of common stock in Troy Bank and Trust Company (‘the Troy bank’), wished to establish joint ownership in the stock with his wife, Lessie. Andress took the stock certificates to the Troy bank, which added ‘Mr. or Mrs.’ to the original certificates issued to Andress. The Troy bank also changed its stockholders’ register and dividend records to reflect that the stock was owned by Mr. or Mrs. Andress. When John Andress died, Lessie indorsed and surrendered the certificates to, the Troy bank and had them reissued in her name. The Troy bank, believing that the certificates were ‘joint survivorship’ certificates, did so. Andrews, 529 So.2d at 988-89.
“Andrews was the executor of John Andress’s estate. He sued Lessie An-dress and the Troy bank seeking a declaration of ownership of the stock. Our supreme court determined that the actions taken by John Andréss in having *474 Lessie Andress added as a co-owner of the stocks constituted an equitable assignment of an interest in the stock to Lessie ‘even though' he never actually indorsed the certificates and never physically delivered the certificates,’ Id. at 992 (footnote omitted). The supreme court specifically found that ‘[t]he evidence clearly supports the trial court’s finding that it was the intent of Mr. Andress to make Mrs. Andress a' co-owner of the stock in question.’ Id.
“The supreme court also held that there had been a constructive delivery of the stock to Lessie Andress, quoting favorably an Idaho Supreme Court case holding that,
“ ‘ “[w]hile the requirement of physical delivery contained in [Uniform Commercial Code] Article 8 may serve a valid evidentiary purpose in the case of a sole owner, where,- as here, there is more than one listed owner, the requirement that the new owners personally receive physical possession of the stock certificates to' constitute a valid transfer is not applicable because both joint tenants cannot enjoy possession simultaneously.... This result is especially appealing because possession by. one co-owner is deemed possession by all.” ’
“Andrews, 529 So.2d at 991, quoting Ogilvie v. Idaho Bank & Trust Co., 99 Idaho 361, 365, 582 P.2d 215, 219 (1978).
“Johnson, the other case the trial court in this case relied upon in determining that delivery of the stock certificates to Brazelton or BP was not required, involved an action in equity by an alleged joint owner of corporate stock to compel the sale of the stock and the division of the proceeds among the alleged joint owners, all of whom were siblings attempting to determine the ownership interest of stock held by their deceased parents and their uncle. At issue was whether there had been a valid transfer of stock pursuant to the Uniform Stock Transfer Act (‘the USTA’), which, at-the time Johnson was decided, was codified at-Title 10, § 48, Ala. Code 1940 (Recomp. 1958).
“The Johnson court held that the transfer of corporate stock, in the strict or technical sense, was not involved in that.case, and that the USTA was without controlling influence. The court concluded that, as a matter of law, the rule of equitable assignment of corporate stock was not abrogated by the adoption of the USTA. Accordingly, Alabama law continues to recognize the equitable principle that, as between the parties, there may be a transfer of ownership of stock in a corporation when the owner presently intends to make such a transfer even though there is some technical defect in the mode of transfer. See Johnson, supra; and Nashville Trust Co. v. Cleage, 246 Ala. 513, 21 So.2d 441 (1945)."
Butler, 33 So.3d at 1225-26 (footnote omitted).
After considering the opinions in Andrews and Johnson, this court wrote the following:
“The holdings in Andrews and Johnson lead us to conclude that the transferee still must obtain physical possession of securities such as shares of stock for the transfer to be valid, with two exceptions: (1) when the transferor attempts to transfer only partial ownership so that he or she becomes a co-owner with his or her transferee, and (2) when an identified security to be delivered is still in the possession of a third person when that third person acknowledges that he or she holds the security for the purchaser.”
Id. at 1227-28.
The evidence is undisputed that Citizens did not have physical possession *475 of the stock certificate. It is also undisputed that Citizens, was not a co-owner .of the stock. The Whites, DP Families, and Citizens all recognized that the value of the stock was collateral for the loan from Citizens to DP Families.
Citizens contends that, because the receipt reflects that it was given in lieu of the stock certificate, AWG “acknowledged” that it was holding the.stock for DP Families. There is absolutely no evidence, however, that AWG gave any type of acknowledgment that it was holding the stock for Citizens. In fact, the evidence tends to demonstrate that AWG was not holding the stock for Citizens or any other third party. As mentioned, the membership agreement between AWG and DP Families provided that AWG would retain possession of the stock purchased by DP Families as security for all obligations DP Families owed to it and stated: “No third party shall be given any security interest in any [AWG] equity without the prior written consent of [AWG].” There is no evidence that AWG gave consent, either written or verbal, to allow Citizens to have a security interest in the stock.
Furthermore, the receipt that AWG provided to DP Families provided that it was given in lieu of the stock certificate, that the stock certificate was pledged to secure DP Families’ obligations to AWG, and that the stock certificate would be held' by AWG. Based on the record before us, we conclude that the record supports the trial court’s determination that AWG was not holding the stock for Citizens. Thus, neither Andrews nor Johnson is applicable in this case, and Citizens could not properly claim that it had received delivery of the stock.
We have found no legal support for Citizens’ contention that delivery of the receipt to Citizens was the equivalent of delivery of the stock certificate itself. We conclude that the trial court’s finding that Citizens did not perfect its security interest pursuant to §. 7-8-301(a) was correct and that Piggly Wiggly’s security interest in the stock was therefore superior to - Citizens’ interest..
For the reasons set forth above, the judgment of the trial court is affirmed.
AFFIRMED.
Pittman, Thomas, Moore, and Donaldson, JJ., concur.

. Citizens has made no argument before the trial court or on appeal that it perfected its security interest in the stock by any other means, including by filing a financing statement that included the stock, § 7-9A-310, Ala. Code 1975, or by taking control of the stock, § 7-9A-314, Ala. Code 1975. Any argument that Citizens could have made on appeal asserting' other methods of perfection of a security interest in the stock is deemed waived. See Gary v. Crouch, 923 So.2d 1130, 1136 (Ala. Civ. App. 2005) ("[T]his court is confined in its review to addressing the arguments raised by the parties in their briefs on appeal; arguments not raised by the parties are waived.”); see also Brady v. State Pilot *473 age Comm'n, 208 So.3d 1136, 1143, (Ala. Civ. App. 2015).

. Piggly Wiggly concedes that, because DP Families offered Citizens the stock as collateral for the loan, Citizens was a "purchaser” for purposes of determining whether the requirements for delivery were met. See § 7-1-201(29) and (30), Ala. Code 1975.